ALFORD BROTHERS AND WHITESIDES, ROSTER LUMBER COMPANY AND MRS. U. C. HOOPER v. M. E. WILLIAMS ET AL.

Decided January 26, 1906.

1.—Joinder of Party Defendant.

Plaintiffs' suit being for the contract price of timber cut from land, it was proper to make any one claiming an interest in said timber a party defendant.

2.—Joinder of Causes of Action.

In a suit for the contract price of timber cut from land, it was proper to join one who was asserting claim to part of the land and have the title to the land adjudicated.

**3.—Statute of Frauds.**

Even if a sale of growing timber is a contract for sale of real estate, the defendants having appropriated the timber under an oral contract could not defeat plaintiffs' suit for its value by pleading the statute of frauds.

**4.—Title—Pleading.**

Plaintiffs plead title both by regular chain from the sovereignty of the soil, and by limitation. They could therefore prove title by either or both methods.

**5.—Title by Limitation—Separate Property—When.**

When adverse possession of land is begun by the wife before marriage, the title which ripened by limitation after marriage is hers, and the land her separate property.

**6.—Transfer of Land Certificate—Title.**

The transfer in writing of a land certificate after it has been located is in equity a conveyance of the land.

**7.—Same.**

Possession of an unlocated land certificate is prima facie evidence of ownership.

**8.—Community Debt—Payment by Wife.**

Where at the time a community debt is made the wife agrees that her separate property may be applied to its payment, she cannot afterwards recover the money so applied.

Appeal from the District Court of Panola County. Tried below before Hon. R. B. Levy.

*Walker & Chamness* and *D. M. Short & Sons,* for appellants.—If a plaintiff would join different parties as codefendants in his suit, he must show by proper allegations that all parties whom he would make defendants are interested in his cause of action; and if there are different phases to his cause of action, he must show a privity between the different defendants. He can not sue different parties on different causes of action and join them in the same suit, unless there is a privity among the defendants.

In trespass to try title when one elects to prove title specially, he must be held to prove his title strictly as plead.

The title to all real estate acquired by limitation by either spouse during marriage is community property, that is to say: Should any person occupy a piece of land with the intent of acquiring title to the same by limitation, and should such person marry before the said title is perfected by limitation, and should the said land be occupied after marriage a sufficient length of time to perfect the title by limitation, the joint occupancy of the said land makes the same community property.

When a conveyance is made to a married woman, unless the said conveyance stipulates that the lands are for her separate use and benefit, the lands are presumed to be community property; and the husband, by his separate conveyance, can convey the title to the same to a third party, unless such third party knows that said lands are the separate property of the wife.

When a land certificate has been located and the land surveyed and

the land thus becoming segregated from the public domain, a sale of the land certificate by virtue of which the said lands were located does not convey the title to the land previously located.

A promise of marriage is no valid consideration for the conveyance of real estate from a man to a woman.

*H. N. Nelson,* for appellees.—Mrs. Hooper was not only a proper but a necessary party to this suit. Henderson v. Terry, 62 Texas, 281; Black v. Black, 62 Texas, 296.

When one takes benefits under a contract he will not be allowed to say that the contract was not valid. Central Texas Mfg. & L. Co. v. Weems, 73 Texas, 252; Spann v. Cochran, 63 Texas, 240; Brewer v. Wall, 23 Texas, 585; Allison v. Shillings, 27 Texas, 450; Castleman v. Sherry, 42 Texas, 59; Ponce v. McWharter, 50 Texas, 563.

All property owned or claimed by the wife before marriage shall be her separate property. Sayles' Civil Statutes, art. 2967; Welder v. Lambert, 91 Texas, 524; Texas & N. O. Ry. Co. v. Speight, 59 S. W. Rep., 572.

The sale of a land certificate, or a part thereof designating what part, after the location of the certificate, conveys an equitable title to the land or in the land. Hearne v. Gillett, 62 Texas, 25; Tevis v. Collier, 84 Texas, 642; Thompson v. Langdon, 87 Texas, 259; Hume v. Ware, 87 Texas, 383. Description: Curdy v. Stafford, 88 Texas, 123; Bitner v. New York & Texas Land Co., 67 Texas, 342; Robertson v. DuBose, 76 Texas, 1.

The wife's separate property can not be taken to pay the husband's debt. Read v. Allen, 56 Texas, 176; McGee v. White, 23 Texas, 180; Haynes v. Stoval, 23 Texas, 625; Harris v. Williams, 44 Texas, 124; Kempner v. Conner, 73 Texas, 196; Coleman v. First National Bank, 17 Texas Civ. App., 138; Warren v. Smith, 44 Texas, 245.

A sale of a land certificate after it has been located, or a part thereof, conveys an equitable title to the land and especially when the conveyance shows where the land is located. Tevis v. Collier, 84 Texas, 642; Thompson v. Langdon, 87 Texas, 259; Hume v. Ware, 87 Texas, 383; West v. Loeb, 42 S. W. Rep., 613.

PLEASANTS, Associate Justice.—This suit was brought by the appellee, M. E. Williams, joined by her husband N. C. Williams, against the appellants, Alford Bros. & Whiteside and Roster Lumber Company, to recover damages for the alleged breach of a contract for the sale of timber upon a tract of 640 acres of land in Panola County, alleged to be the separate property of Mrs. Williams. The appellant, Mrs. U. C. Hooper, was made a party defendant under allegations charging that she was asserting claim to a portion of the land, and on account of said claim the other defendants refused to pay plaintiff for the timber cut by them on said land under their contract with her.

Plaintiff pleaded a record title, and also title by limitation, to all of the land, and prayed for recovery against Mrs. Hooper of the title and possession of the part claimed by her, and removal of the cloud upon the title caused by her pretended claim.

For cause of action against the first named defendants the petition

alleges in substance that on November 11, 1895, plaintiff sold to the Timpson Hardwood Lumber Company all of the pine and hardwood timber upon 640 acres of land on the William McFadden survey in Jasper County, except the post-oak and walnut timber; that subsequently, by an oral agreement, they released the Timpson Company from said contract and accepted in its stead the defendants Alford Bros. & Whiteside and Roster Lumber Company, who agreed to fulfill and carry out all of the obligations imposed by said contract upon the Timpson Company; that in pursuance of this agreement said defendants entered upon the land and cut therefrom large quantities of pine timber, but refused to cut any of the hardwood timber; that said defendants have failed to pay them for all of the pine timber so cut, and that by reason of the fact that the pine timber has been all cut from the land there is now no market for the hardwood left thereon. The contract price of the timber is alleged to be fifty cents per thousand feet, and recovery is asked for the agreed value of the pine timber cut by defendants and for which plaintiffs have not been paid, and for the difference between the contract price of the hardwood timber and its value as left upon the land after the pine had been cut, the aggregate amount claimed being $775.

The defendants filed separate answers containing general and special exceptions and general denial, the nature of which special exceptions, so far as necessary to the understanding of the questions presented by this appeal, will be hereinafter disclosed.

The defendants Alford Bros. & Whiteside and Roster Lumber Company also pleaded specially that the contract sued on was a sale of real estate and was unenforceable because not in writing; that plaintiffs violated any contract that may have existed between them and said defendants in regard to the uncut timber by selling it to other parties, and are therefore estopped from claiming anything from these defendants for failing to cut said timber. They also pleaded payment and settlement in full of all amounts due plaintiffs for the pine timber cut upon the land except that cut upon the 124 acres claimed by Mrs. Hooper, and as to this it is averred that plaintiffs are estopped from claiming anything from said defendants because they, the plaintiffs, stood by and permitted the defendants to pay Mrs. Hooper for said timber and did not inform them of their claim to said land.

In reply to this answer plaintiffs filed a supplemental petition containing general and special exceptions and a special plea in which they allege that the 640 acres of land was the separate property of Mrs. Williams and that the payment and settlement pleaded by defendants is not binding upon said plaintiff because in said settlement defendants were allowed a credit for $725 due by N. C. Williams for merchandise purchased from defendants, and that Mrs. Williams did not consent that the money due her for said timber, which was her separate property, should be applied to the payment of said account.

All exceptions were overruled, and the case was tried by a jury on special issues.

Upon the findings of the jury supplemented by findings of the trial court judgment was rendered in favor of plaintiffs against the defendants, Alford Bros. & Whiteside and Roster Lumber Company, for $255

and against Mrs. Hooper for 102 acres of the 124 acres of land claimed by her, and in her favor for the remaining 22 acres of said land. From the judgment all of the defendants have appealed.

The record discloses the following facts, most of which are embodied in the answers of the jury to the questions submitted to them, and in the findings of fact filed by the trial court.

The 640 acres of land, of which the land in controversy is a part, was patented by the State of Texas to the heirs of William McFadden on October 23, 1871. The certificate, by virtue of which the land was patented, was transferred by the heirs of McFadden to Chas. Lewis on August 30, 1856, and was transferred by Lewis to J. W. Flanagan December 7, 1857.

The certificate was located and the land surveyed and field notes returned to the Land Office in 1860. On May 28, 1867, N. C. Williams, in consideration of a promise of marriage, conveyed this land to M. E. Segar, who is now the plaintiff, Mrs. M. E. Williams, she having married Williams shortly after the land was conveyed to her. On December 21, 1867, J. W. Flanagan conveyed 609 acres of said land to M. E. Williams for a recited consideration of one dollar. N. C. Williams testified that he had purchased the land from Flanagan prior to the time he conveyed it to Miss Segar, but did not receive any written transfer, and that after his marriage to Miss Segar, she being dissatisfied with the state of title, he procured for her the deed from Flanagan before mentioned, which was executed in confirmation of the previous verbal sale to him. Mrs. Williams began to assert claim to the land immediately after it was conveyed to her by N. C. Williams, and after her marriage she and her husband improved a part of, and have been in actual possession of the part so improved since 1873. The testator of the defendant, Mrs. Hooper, was in possession of the 102 acre tract in controversy at the time plaintiffs sold the timber thereon to defendants, Alford Bros. & Whiteside and Roster Lumber Company, and plaintiffs knew at that time that he was claiming the land. The last named defendants did not assume the contract of the Timpson Company with plaintiffs, but with the consent of that company they purchased from plaintiffs the pine timber on the land and agreed to pay therefor the sum of fifty cents per thousand feet. The value of the timber cut by them on the land was $1,085.21. Of this amount $250 was the value of that cut from the 102 acre tract. They paid plaintiff for the timber cut from the balance of the land except $50 worth which was taken from the 22 acres that were adjudged to the defendant Hooper. In making their settlement with plaintiff they allowed credit for the merchandise account of $725. The trial court finds that Mrs. Williams, when this account was made, agreed that it should be paid out of the proceeds of the sale of the timber, and this finding is sustained by the evidence. Hooper demanded and received from the other defendants pay for the timber cut from the 102 acre tract, and the evidence shows that N. C. Williams knew that said defendants were paying Hooper for this timber, and that he made no protest or objection, but there is no evidence that Mrs. Williams knew of these facts.

Mrs. Hooper showed title under a deed from plaintiffs to B. C. Segar to 70 acres of the survey, and 22 acres of the 124 acres was

shown to be included in the boundaries of the 70 acre tract, and she recovered judgment for same. She also showed chain of title from one Kellog Strong to her testator to the 102 acres, but no title was shown in Strong. She offered a deed from N. C. and M. E. Williams to Strong, dated June 31, 1879, conveying this 102 acres, but it was not considered as evidence of title by the trial court because not properly acknowledged by Mrs. Williams.

The first assignment of error assails the ruling of the trial court in refusing to sustain defendants' exceptions to the petition on the ground that there is a misjoinder of parties and of causes of action, and that the alleged contract by which defendants agreed to take and pay for the timber upon plaintiffs' land was a contract for the sale of real estate, and not being in writing was contrary to the statute of frauds and unenforceable.

We think neither of these objections to the petition are tenable. The subject matter of plaintiffs' suit against Alford Bros. & Whiteside and Roster Lumber Company being the value of the timber taken by them under the alleged contract, it was proper to make anyone claiming an interest in said timber a party defendant. The alleged claim of Mrs. Hooper to the timber grew out of her claim to the land, and in order to determine plaintiffs' right to recover the value of the timber they were required to show title to the land as against her, and consequently there was no misjoinder of causes of action.

If it be conceded for the sake of argument that a contract for the sale of growing timber is a contract for the sale of real estate and within the purview of the statute of frauds, the defendants having, under their oral agreement, cut the timber and appropriated it to their own use, can not set up in defense of plaintiffs' suit for the value of the timber that the contract under which they obtained it was contrary to the statute requiring such contract to be in writing.

There is no merit in the second assignment which complains of the ruling of the trial court in refusing to sustain defendants' objection to the introduction in evidence by plaintiffs of a transfer of the land certificate from the heirs of McFadden to Charles Lewis. The ground of their objection presented in the brief is that plaintiffs having pleaded a limitation title could not show title in any other way. The petition alleges title in plaintiffs by a regular chain from the sovereignty of the soil and sets out each link in the chain, and in addition to this alleges title under the several statutes of limitation. Under these allegations it goes without saying that they could show either or both of the titles pleaded.

The third assignment complains of the finding of the trial court that the land was the separate property of Mrs. Williams. The contention under this assignment is that the only title shown in Mrs. Williams was by limitation, and this title having been perfected after her marriage the land thereby became community property.

In the case of Texas, N. O. Ry. Co. v. Speight, 59 S. W. Rep., 572, we held that the adverse possession of the wife having begun before her marriage, the title which ripened by limitation after marriage was hers, and the land thus acquired her separate property. Upon a writ of error to the Supreme Court our decision was reversed, but not upon this point,

that court holding that limitation was not shown, and expressly stating in its opinion that it was .not necessary to decide whether had limitation been shown the land would have been the property of the wife. We think our conclusion in that case, above stated, is sound and is supported by authority.

The general principle that a title when perfected relates back and takes effect from the time of its origin, and its status as separate or community is determined by the character of the right in which it had its inception, is established by the cases of Manchaca v. Fields, 62 Texas, 135; Welder v. Lambert, 91 Texas, 510.

In the present case the land was conveyed to Mrs. Williams before her marriage and she at once began her assertion of ownership, and she and her husband took and held adverse possession of the land under that deed and the deed to her from Flanagan for a sufficient time to perfect title by limitation. We think the trial court was correct in holding that the property thus acquired was Mrs. Williams' separate property.

We are further of the opinion that Mrs. Williams acquired an equitable title to the land through the transfer to her by Flanagan of the certificate. This transfer of the certificate was in writing, and although the certificate had been previously located and it was no longer personal property that could be transferred by parol, its assignments in writing is held in equity to operate as a conveyance of the land. (Lewis v. Johnson, 68 Texas, 448; Tevis v. Collier, 84 Texas, 642; Thompson v. Langdon, 87 Texas, 254; Hume v. Ware, 87 Texas, 383.)

There can be no question that the title acquired from Flanagan was for the separate use of Mrs. Williams. Aside from the question of whether the deed, which only recites a nominal consideration of $1, should not be regarded as a deed of gift, the undisputed evidence shows that Williams had conveyed the land to Mrs. Williams for a valuable consideration prior to her marriage, and that he procured the execution of the transfer from Flanagan in order to perfect the title in Mrs. Williams.

From what we have heretofore said as to the applicability of the statute of frauds to the facts of this case, it follows that there was no error in the ruling of the trial court permitting the plaintiff, N. C. Williams, to testify that the defendants, Alford Bros. & Whiteside and Roster Lumber Company, verbally agreed with him and the Timpson Company, after he had, by written transfer, sold all the timber on the land to the latter company, that they would take the pine timber and pay him for it at the price specified in the sale to the Timpson Company. As before stated, the undisputed evidence shows that these defendants appropriated the timber under said agreement and they can not resist payment therefore on the ground that the contract under which they obtained it was not enforceable because not in compliance with the statute requiring such contracts to be in writing, and the fourth assignment which predicates error upon the admission of this evidence can not be sustained.

The fifth assignment complains of the ruling of the court in admitting in evidence the transfer of the certificate from Flanagan to Mrs. Williams, over the objection of the defendants, that the certificate having been previously located its transfer did not pass any title to the land.

We have disposed of the question presented by this assignment in our previous holding that such transfer conveyed an equitable title to the land.

The deed from N. C. Williams to Mrs. Williams was admissible in evidence under the plea of limitation for the purpose of showing the extent of her claim, and the objection to its admission on the ground that no title was shown in N. C. Williams was properly overruled.

We think the evidence showing that the parties who transferred the certificate to Lewis were the heirs of Wm. McFadden was sufficient to render the transfer admissible. The undisputed evidence shows that the delivery of the original certificate accompanied the transfer, and that it was in the possession of Flanagan after he purchased from Lewis. At that time it had not been located and title to it could have passed by parol. The fact that the parties who made the transfer as the heirs of McFadden had possession of and delivered the certificate to their assignee is *prima facie* evidence that they were the owners of said certificate.

This disposes of all the questions of law presented in appellant's brief. The remaining assignments assail various findings of fact by the jury and the trial court on the ground that they are not supported by the evidence. We have considered all of these assignments and in our opinion none of them can be sustained.

Appellees by cross assignment complain of the judgment of the trial court in allowing defendants credit on the amount due Mrs. Williams for her timber for the merchandise account due them by N. C. Williams. The evidence sustains the court's finding that Mrs. Williams agreed when the merchandise account was opened that defendants should be paid therefor out of the proceeds of the sale of the timber. Under this agreement Williams was authorized to so apply said proceeds, and his settlement with defendants can not be set aside by his wife on the ground that the money due for the timber was her separate fund. Having authorized her husband to use it in the purchase of the merchandise, she can not recover it back from the defendants.

We have found no error in the judgment of the trial court and it is in all things affirmed.

*Affirmed.*