STATE BANK OF COMMERCE v. COX.
(No. 8240.)

(Court of Civil Appeals of Texas. Dallas. Jan. 3, 1920. Rehearing Denied Feb. 7, 1920.)

1. HUSBAND AND WIFE ⬿249—CROP PLANTED AND RAISED BY WIFE AFTER HUSBAND'S DEATH NOT COMMUNITY PROPERTY THOUGH HUSBAND HAD PREPARED LAND.

Where a husband prepared rented land for cotton crop, and, after his death before planting, the wife procured the seed, planted the land, cultivated and raised the crop, the crop is not a part of the community property, and hence a bank in which the proceeds of the crop were deposited by the wife cannot apply same to discharge of a community note.

2. HUSBAND AND WIFE ⬿264 — EVIDENCE INSUFFICIENT TO SHOW THAT WIDOW'S BANK DEPOSIT WAS COMMUNITY PROPERTY.

Where a bank which held community notes executed by the deceased husband, applied after his death to payment of notes a deposit standing in the name of the widow, evidence *held* insufficient to show that the sum of $60 which was the first item in the widow's passbook was part of a deposit standing in the name of the husband at the time of his death; hence direction of a verdict for the widow was not improper on the ground that such sum was community property.

Appeal from District Court, Hunt County; A. P. Dohoney, Judge.

Action by Mollie A. Cox against the State Bank of Commerce. From a judgment for plaintiff, defendant appeals. Affirmed.

T. W. Thompson and Clark & Sweeton, all of Greenville, for appellant.

B. Q. Evans, of Greenville, for appellee.

TALBOT, J. Appellee, Mollie A. Cox, is the surviving wife of C. B. Cox, who died March 23, 1917. She and her deceased husband were married in 1898 and had five children, the oldest being 19 years of age at the trial of this case. At the time of his death, deceased, C. B. Cox, owed appellant three notes, as follows, to wit: One in the sum of $550 of date September 30, 1916, due October 1, 1917, bearing interest at 10 per cent. from maturity; another in the sum of $375 of date October 18, 1916, due October 15, 1917, bearing 10 per cent. interest from date; and the third in the sum of $325, of date December 1, 1916, due November 1, 1917, with interest at 10 per cent. from maturity. The three notes and interest thereon aggregated the sum of $1,287.50 on the 1st day of November, 1917, and were community obligations of the appellee and her deceased husband. The deceased, C. B. Cox, had rented the Sayles farm, located about one mile from Commerce, Hunt county,

Tex., for the year 1917, and at the time of his death had sowed 25 acres of wheat and oats and had 91 acres of land plowed, bedded, and prepared for planting in cotton. Appellee purchased cotton seed after the death of her husband, and, together with her children and some hired help, planted, cultivated, gathered, and marketed the cotton crop, including the cotton seed raised on said rented premises for the year 1917, and deposited the proceeds arising from the sale thereof with appellant bank. In addition to depositing her cotton money in said bank, she deposited therein $75, which she had received from the Odd Fellows Lodge, and $991, the proceeds of a Woodmen insurance policy made payable to her. She had drawn out of said bank on September 15, 1917, her balance, which she says was $153.07. The money deposited by her in the bank thereafter, amounting to more than $2,000, came from the sale of the cotton and cotton seed raised on said rented premises during the year 1917. The appellee harvested the wheat and oats crop, which had been sowed before her husband's death, and applied practically all of the proceeds arising from the sale thereof, which was of small amount, to the support of herself and children, and to the employment of a man to help make the crop. None of it was deposited in appellant's bank. At the date of the death of appellee's husband, some farming implements, live stock, and perhaps some other personal property were on hand; but it was of such character that all of it was exempt from execution or forced sale by the Constitution and laws of this state, and none of the proceeds arising from the sale thereof by appellee was deposited in appellant's bank. A bank or passbook furnished appellee by appellant showed a deposit of $60.95, and appellee testified in reference thereto that, if she understood the book correctly, the amount of that item was in the bank at the time her husband died. She said:

"It is styled there in the book, 'Mrs. Mollie A. Cox, March 26th, 1917, $60.95, and that is what he had left in the bank, I suppose, and they transferred it from him to me."

On or about November 1, 1917, appellee demanded of appellant her balance. In response to said demand, appellant paid the three notes out of the funds on deposit with it, charged the same to the account of appellee, and delivered said three notes duly canceled, together with the sum of about $400, to appellee. Appellee at no time consented to the payment of the notes out of said funds, and on the 6th day of November, 1917, filed this suit against appellant for converting said sum of $1,287.50 of her money, alleging that the money was her separate property and not subject to the payment of

said notes. Appellant answered by general demurrer and general denial. The cause went to trial on the 16th day of December, 1918, before a jury. When appellee closed her evidence, appellant made a motion for an instructed verdict in its favor, which motion was by the court overruled, to which action of the court appellant duly excepted. When the evidence was all in and both sides had rested, the court, over appellant's objections and exceptions, charged the jury peremptorily to find for appellee in the full amount sued for. Appellant's motion for a new trial being overruled, it appealed.

[1] It is contended for the appellant that the trial court erred in directing the jury to return a verdict in favor of the appellee and in overruling appellant's motion for a peremptory instruction to find for it, because the undisputed evidence shows that the notes, to the payment of which the money sued for was applied, were the community debts of appellee and her deceased husband, and said money, or at least a part of it, was the community property of appellee and her deceased husband, and therefore, subject to the payment of said notes; that said notes being community debts of appellee and her deceased husband, and the money used by appellant in the payment of said notes being their community property, and appellant having said money on deposit and being the owner of the notes, had the legal authority to apply said funds to the payment thereof. The appellee denies that the money on deposit with appellant was the community property of herself and her deceased husband, but asserts that said money was her separate property, not subject to the payment of said notes, and therefore appellant had no right or authority whatever to apply the same to the payment of said notes. The principal question for decision, then, is: Was the cotton crop raised by appellee on the farm which had been rented for the year 1917 before the death of her husband her separate property or the community property of herself and her deceased husband? We conclude the facts show the crop to be appellee's separate property and that the proceeds arising from the sale thereof were not subject to the payment of community debts. It is undisputed that appellee bought and planted the seed after the death of her husband, and thereafter, together with the aid of her children and Mr. Forrester, a hired man, cultivated and gathered the crop. Appellee testified without contradiction that after her husband's death she bought the cotton seed to plant, planted the seed, hired the work done, and made and gathered the crop, and that she herself "worked in the crop from early cotton chopping time until August." The man Forrester who helped to make the cotton crop had been hired by appellee's husband, but he testified that after the death of the husband appellee hired him and paid him from $1.25 to $1.50 a day for his work. Appellee testified to the same effect.

It is true the farm was rented and the ground planted in cotton was broken and bedded before the husband's death, but we do not think these facts of controlling importance in determining the question before us. The mere renting of the farm and bedding of the land to be planted in cotton by the husband was not sufficient, in our opinion, to fix the status of the crop planted, cultivated, and raised thereon by the wife after the death of the husband, as that of community property. The status of its title, as belonging to the community estate of appellee and her deceased husband or to her separate estate, is determined rather by the planting of the cotton seed and the cultivation of the plant to the maturity of the crop, than by the bedding of the ground preparatory to such planting and cultivation. The original property right in the cotton produced by the planting and cultivation of appellee does not, we think, date from the mere bedding of the land, but from the sowing of the seed, which, aided by appellee's cultivation, brought into existence the cotton crop in question. If this view is correct, the original property right was not acquired during the marriage of appellee and her husband, and the cotton in question was not community property, but the separate property of the appellee. We have examined the cases cited by appellant in support of its contention, but we believe they are not applicable. The nearest in point is perhaps the case of Booker v. Booker, 207 S. W. 675; but the present case is easily distinguishable from that in its facts.

[2] But appellant contends that—

Even if the cotton crop raised by appellee during the year 1917 was her separate property, "the court erred in peremptorily instructing the jury to find for appellee for the full amount sued for, because the undisputed evidence shows that appellee's deceased husband had on deposit with appellant at the time of his death the sum of $60.97, for which amount, in any event, appellant was entitled to credit."

This contention we are not prepared to sustain. It is not at all clear from the evidence that appellee's husband had on deposit with appellant at the date of his death the sum mentioned. The proper construction of appellee's testimony on the subject is that she did not of her own knowledge know of any such deposit. She said:

"If I understand this bank book right, there was $60.97 in the bank at the time that Mr. Cox died. It is styled there in the book, Mrs. Mollie Cox, March 26th, 1917, $60.97, and that is what he had left in the bank, I suppose, and they transferred it from him to me."

The bank book in question was furnished to appellee (not to her husband) by the appellant, and the only deposit shown thereby corresponding in amount to the one she testified about appears to have been deposited March 26, 1917, which was after the death of the husband. That the amount was in the bank at the time appellee's husband died and was by the appellant transferred to her account seems to be a mere matter of supposition on her part. Her testimony fails to disclose any personal knowledge of the transaction by her, and no officer or employé of the bank testified in regard to the matter. Looking to the bank book alone, the presumption would obtain that the deposit was made by appellee; but whether the amount constituted community funds of herself and husband, or was her separate property, nowhere appears. But however this may be, we think the testimony very conclusively shows that appellee drew out of appellant bank on September 15, 1917, all the money she then had on deposit, and that no part of the $60.97 was applied to the payment of the notes appellant held against appellee's husband, but that the entire sum appropriated for that purpose arose from the sale of the cotton crop she raised during the year 1917.

We conclude the judgment should be affirmed, and it is so ordered.

Affirmed.