## WRIGHTSMAN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9358.

Circuit Court of Appeals, Fifth Circuit.

April 10, 1940.

Harry C. Weeks and R. B. Cannon, both of Fort Worth, Tex., for petitioner.

Robert N. Anderson and Sewall Key, Sp. Assts. to Atty. Gen., Samuel O. Clark, Asst.

Atty. Gen., and J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and John W. Smith, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

Petitioner and his wife keep their books, and their tax returns are made on the cash receipts and disbursements basis. In the separate income tax returns each filed for 1936, a salary of $50,000 for that year voted to petitioner as president of the Wrightsman Oil Company, on December 30, 1936, was treated as community property, each reporting 1/2 of it as his income. The question for decision here is when, under the laws of Texas, where petitioner and his wife were on December 30th, residing, the salary was "acquired." Was it "acquired" on the day it was voted to him and therefore, as claimed by them, community property, or was it, as found by the commissioner and the board, [1] earlier "acquired" while petitioner was still resident in Oklahoma and therefore all of it his separate property, except 8/365, that part of it earned in the eight days after the Wrightsmans moved to Texas?

The facts are not in dispute, indeed all of the testimony comes from petitioner and his employees. Petitioner and his wife are the sole stockholders, petitioner owning 80% and his wife 20%, and they, with an employee, are the directors of the Wrightsman Oil Company, a Delaware corporation, doing business in several states, but with its principal office in Texas.

Up to December 24, 1936, and for many years prior thereto, petitioner and his wife were domiciled in the state of Oklahoma. On that date they moved to Fort Worth and have lived in Texas ever since. During the whole of 1936, petitioner was, and for many years before had been, a director and the president, manager, chief executive officer and principal stockholder of the Wrightsman Company. In the taxable year, petitioner devoted all of his time to its affairs and that of a subsidiary, with no express or definite agreement as to salary or other

compensation, but with a general understanding, the same he had had in and for prior years, that it would depend in each year upon the net earnings of that year, and the Board of Directors would fix it at the end of the year when these would be fairly known. It was pursuant to this understanding that the Board of Directors on December 30, 1936, adopted the salary resolution: "Motion duly made and carried that J. D. Wrightsman, President of the Company, be allowed a salary or $50,000 for the year 1936," and petitioner was credited with that amount on the books of the company.

It is settled law in Texas that as used in the statute (Vernon's Ann.Civ.St. art. 4619), "acquired" refers to the origin or inception of the right or title, rather than the completion or ripening of it. Speer, Law of Marital Rights in Texas, [2] 3d Ed., Page 524, Sec. 438. Petitioner does not at all dispute this. His difference with the respondent and the board springs from his view that to have force as the origin or inception of a right or title, the claim of right must be a legally enforceable one, and his insistence that petitioner's right to a salary before it was voted to him, was so indefinite both as to amount and obligation, as to be unenforceable. We do not think this will do. Whether a claim of right or title to property is to be regarded as the origin or inception, and therefore for the purpose of determining its character as separate or community, the acquisition of it is not to be determined by whether the claim was when first asserted, legally enforceable. What is important is, was the claim to the right or title asserted in good faith; was it pursued and persisted in until the right or title ripened; that is, was the ripening of the title or right, in law and in fact, referable to the claim. This is well illustrated by cases dealing with the acquisition of title by limitation. When the title rests on adverse possession alone, the ripened right is referable, not to the beginning but to the end of the period, for until the full time has run, nothing has been or can be, acquired. At the beginning of the last day of the period, the claim is no better than it was on the first day. 23 Texas Jurisprudence, Sec-

[1] 40 B.T.A. 501.

[2] Cf. Manchaca v. Field, 62 Tex. 135; Lee v. Lee, 112 Tex. 392, 247 S.W. 828; State Bank v. Cox, Tex.Civ.App., 218 S. W. 82; Bishop v. Williams, Tex.Civ.App. 223 S.W. 512; McDaniel v. Lauchner,

Tex.Civ.App., 206 S.W. 221; LeBlanc v. Jackson, Tex.Com.App., 210 S.W. 687; Weldner v. Lambert, 91 Tex. 510, 44 S. W. 281; Cf. Commissioner v. King, 5 Cir., 69 F.2d 639.

tions 56 and 109.[3] The possessor has no more than the possibility of title which may be interrupted any moment by suit filed or by his failure to keep his flag flying. Where, however, the title has its inception in some instrument or equity, which, though for some reason, it might not be enforceable, is asserted throughout the period of limitation, the title thus ripened is referable, not to the end of the limitation period, but to the beginning of it in the assertion of the claim of right. Texas Jurisprudence, supra.[4]

Assuming then, as petitioner claims, that he had no contract for salary which he could enforce, he certainly had an understanding that he was to be compensated with a salary and he was so compensated, and it may not be doubted that the action of the Board of Directors which he regards as the source of his right was referable and was by them referred to, this understanding and the services performed pursuant to it. For upon ascertaining that the year had been profitable, they voted the salary to him in precise accordance with the received understanding that they would do so. But we do not agree with petitioner that he had no enforceable contract. The authorities he cites to the effect that an express contract made anterior to his entering upon his duties is an essential to a claim by an officer of a corporation to compensation,[5] are against rather than for him. They all recognize that there is a right to compensation if services performed by the officer are clearly outside or in excess of his duties and are performed under circumstances sufficient to raise a reasonable presumption that it was understood by the proper officers that the services were to be paid for by the corporation.[6] Here it appears by the evidence of petitioner himself that he was not only president but general manager of the company, that he gave it the greater part of his time, and that it was understood that he was to be compensated in proportion to the company's success in making profits. Under these circumstances we think it may not be doubted that he had a right to receive compensation, nor that the understanding he had, that in each year he was to be compensated in proportion to the success of the company's business, is the origin or inception of the right to the salary in question. Particularly may it not be doubted that under Texas law, he "acquired" it, not when it was voted to him on December 30th, but as and when, pursuant to the understanding, he went about performing the duties and rendering the services he had agreed to perform and render.

The commissioner and the board were right. The petition is denied. The decision and order of the board is affirmed.

[3] Odem v. Leahy, Tex.Civ.App., 264 S.W. 218; Brown v. Foster Lumber Co., Tex.Civ.App., 178 S.W. 787; Ross v. Martin, 104 Tex. 558, 140 S.W. 432.

[4] Alford Brothers & Whiteside v. Williams, 41 Tex.Civ.App. 436, 91 S.W. 636; Jackson v. Piper, Tex.Civ.App., 28 S.W. 2d 240.

[5] 10 Texas Jurisprudence, Section 287, page 934; Southwestern Portland Cement Co. v. Latta & Happer, Tex.Civ. App., 193 S.W. 1115–1125; Lofland v. Cahall, 13 Del.Ch. 384, 118 A. 1; Fletcher's Cyclopedia of Corporations, Vol. 5, p. 381 et seq.

[6] Cf. Vaught v. Charleston National Bank, 10 Cir., 62 F.2d 817; National Loan & Investment Company v. Rockland Company, 8 Cir., 94 F. 335; Montana Tonopah Mining Co. v. Dunlap, 9 Cir., 196 F. 612; Fitzgerald & Mallory Co. v. Fitzgerald, 137 U.S. 98, 11 S.Ct. 36, 34 L.Ed. 608.