## FOOSHE v. COMMISSIONER OF INTERNAL REVENUE.
### No. 10204.

Circuit Court of Appeals, Ninth Circuit.

Dec. 31, 1942.

John L. Wheeler, of Los Angeles, Cal., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Willard H. Pedrick, and Bernard Chertcoff, Sp. Assts. to Atty. Gen., for respondent.

Before DENMAN, HANEY, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is a petition to review a decision and order of the Tax Court of the United States determining a deficiency of $1,436.37 in the income tax return of petitioner for the year 1938. The question involved is whether certain 1938 income received by petitioner, a married man, while domiciled in the State of California, was his separate property or that of the community of the spouses.

Petitioner entered the employment of Prudential Insurance Company, hereafter called the Company, in 1919 as manager of its agency in St. Louis, Missouri. The employment contract provided that the manager should receive as part of his compensation a 2½% commission on renewal premiums when collected and paid to the Company on policies written by or through him under this contract. In the event the contract was terminated petitioner was to receive the commissions upon renewal premiums less a collection fee of 2%, that is to say, petitioner, upon leaving the agency, was to receive only ½ of 1% in renewal commissions—the 2% would be lost to him. But one construction can be given this contract. It is that the 2% is paid not for the service of writing the policies, but for services thereafter as manager of the St. Louis office in collection of the renewal premiums.

Petitioner continued in the employ of the Company as its manager in the St. Louis agency until 1938. In the early part of that year the Company approached him concerning his transfer to Los Angeles, California, as manager of that agency. Petitioner was agreeable to this, except for the matter of his compensation for this California service. Under a new business policy of the Company only new "standard form" contracts were made with managers. These provided for a specified monthly salary plus certain commissions on the first year premiums only. The contracts did not contain the feature of the 2½% on the collection of renewal premiums as did petitioner's old Missouri contract. The acceptance of the Los Angeles agency solely under the new standard contract would mean less compensation to petitioner for his services to the Company than that in Missouri. Another element contributing to petitioner's less compensation for serving the Company

in California would be the lesser volume of business then done in the Los Angeles agency, which was much smaller than in the St. Louis agency.

In order that petitioner would be more fully compensated for his services in California and to induce him to take charge of the Company's office there, the Company agreed to waive any right to forfeit the 2% collection fees for serving in Missouri. The old contract was formally cancelled, the agreed waiver made, and petitioner entered into the new standard contract to manage the Los Angeles agency. The executions of the contracts were in Missouri.

Petitioner arrived in Los Angeles on May 1, 1938, and established his domicile. At the end of 1938 he received $21,504.80, being equal to the amount of renewal commissions he would have received had he not given up his Missouri employment. Petitioner divided this income in his tax return for that year between himself and his wife as community property. The Commissioner determined a deficiency on the theory that it was all separate property, and the Tax Court sustained his determination. This review followed.

No question is raised concerning the status as petitioner's separate property of the ½ of 1% renewal commission which came to him under the old contract, regardless of its termination. Petitioner's sole contention is that the sums received because of the waiver of the 2% collection fees on renewal premiums are community property since they represent part of his compensation as manager of the Los Angeles agency. Respondent contends the commissions are petitioner's separate property because (a) they are a mere reward or bonus for past services rendered in Missouri, a non-community property state, and (b) the contracts of termination of the Missouri employment with the cancellation of the 2% collection charge and the contract for the California employment were executed in Missouri.

■ We agree with the contention of the petitioner. Upon the termination of the Missouri contract, by the terms of that contract petitioner had no legal right to receive the 2% for collecting the future renewal premiums. There is no ground for a presumption or inference by the Commissioner or the Tax Court that the Company would give him a bonus for services

in the future he would not render. The evidence is to the contrary. The vice-president of the Company in charge of making the cancellation of the contract for Missouri services and the new contract for California services, testified "It was felt by waiving this 2% collection fee that the amount that would accrue to Mr. Fooshe, [petitioner] together with the guaranteed salary to be paid him, would be ample compensation for the supervision of the Los Angeles Agency."

The Commissioner further contends that even though the 2% is paid in California as part compensation for petitioner's services under the contract to be manager there, while married and domiciled in that state, the payments there must be deemed his separate property because the contract providing for the future creation of the status of principal and agent in California was entered into by petitioner while domiciled with his wife in Missouri, a non-community property state.

With respect to this contention the Commissioner takes the highly inconsistent position that the portion of the contract, also made in Missouri, for the $6,000 a year and first year commissions is community property and he so assessed it. It is also obvious that if this principle be established, the Commissioner will be obliged to recognize the division, on the California community property basis, of annual salaries paid in a non-community property state on a twenty year contract for employment of a married man in that state, if the contract for that period be made by the employee while domiciled with his wife in California. One can visualize the prudent taxpayers who will seek a domicile in one of the eleven community property states when anticipating a contract of employment in a non-community state.

The Commissioner contends the law of California so regards the money acquired by the performance in California of the conditions or covenants of a contract executed in a separate property state. We do not agree. The relationship of principal and agent began in California and the entire performance of the contract by which the money was earned took place there. In the early California case of In re Webb's Estate, Myr.Prob. 93, it was held that even where but part of the performance of a contract, made before marriage, took place after marriage, the portion of the money received under the contract terms was com-

munity property in the proportion which the post marital performance bore to the whole performance, including the separate action of the husband before marriage. There it was insurance moneys paid on the death of the husband on an insurance contract made before marriage and upon which one-third of the premiums was paid before marriage and two-thirds thereafter. Two-thirds of the insurance was held community. This case was cited with approval in New York Life Ins. Co. v. Bank of Italy, 60 Cal.App. 602, 605, 214 P. 61.

In French v. French, 17 Cal.2d 775, 112 P.2d 235, 134 A.L.R. 366, the California supreme court held that, though during marriage, an enlisted man was transferred to the Naval Reserve which gave him rights to future pay, so much thereof as was paid after divorce was his separate property. Here the entire relationship with the Government was created during coverture, but, because certain services were required of the former husband after divorce, they were his separate property. The fact that the contract or relationship with the Government was created during the community property period does not affect the separate character of his earnings thereafter.

In Blumenthal v. Commissioner, 2 Cir., 60 F.2d 715, it was held that a pre-nuptial agreement in Alsace Lorraine, where the community property system prevails, that the husband's future earnings were to be such community property did not affect the separate character of his earnings in New York where the couple were domiciled.

In Modern Woodmen of America v. Gray, 113 Cal.App. 729, 732, 299 P. 754, it was held that under a contract of insurance entered into prior to marriage, the wife, on the insured husband's death, was entitled only to that portion of the insurance which the premiums paid during coverture bore to all the premiums paid both before and after marriage. The decision rests on no peculiarity of the life insurance contract, for the court held that, though the policy would be forfeited if an annual premium were unpaid, it was not a new insurance for each year, but a continuing contract. Cf. McBride v. McBride, 11 Cal.App.2d 521, 524, 54 P.2d 480; Travellers' Insurance Co. v. Fancher, 219 Cal. 351, 353, 26 P.2d 482; Vieux v. Vieux, 80 Cal.App. 222, 229, 251 P. 640.

From these cases it is apparent that so far as concerns contracts for the payment of money, the doctrine of inchoate right, fixing the separate character of such moneys received by the spouse after marriage, upon a contract made before, does not exist in California. The principle is the same with regard to the instant contract, made in a non-community property state and performed in California. The wife acquired a community interest in the 2% collection fees paid after the beginning of the petitioner's management of the Los Angeles agency.

The order of the Tax Court of the United States is reversed.

Reversed.