HARRY B. SIDLES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 34428. Promulgated March 24, 1953.

*J. Lee Rankin, Esq.*, for the petitioner.
*David Karsted, Esq.*, for the respondent.

### OPINION.

WITHEY, *Judge:* The first issue for decision is whether the respondent's notice of deficiency was timely. Petitioner contends that he was required by law to file a final income tax return for 1947 by January 15, 1948, because his prior estimate of tax liability was seriously

underestimated. He states that he obtained an extension of time for filing his final return until February 1, 1948; that he filed a final return on January 23, 1948; and that therefore respondent was required to assess a deficiency by February 1, 1951; that respondent, having notified petitioner of a deficiency on February 20, 1951, more than 3 years after the date the return was filed, was barred under section 275 (a),[1] Internal Revenue Code, from making assessment and collection of a deficiency in income tax for 1947. Petitioner further contends that since his original estimate of tax liability was less than 80 per cent of his final tax liability, he would have been subject to the penalty provided in section 294 (d) (2),[2] Internal Revenue Code, if he had not filed a final tax return by January 15 of the succeeding taxable year. We do not agree with the petitioner.

Ordinarily any return filed prior to the last day prescribed by law is considered filed on the last day. See section 275 (f).[3] Petitioner argues that the general rule is not applicable in the present situation because of section 58 (a) and (d) (2) and (3). Section 58 (a) requires each individual to file a declaration of his estimated tax during the taxable year, provided his income meets the requirements of section 58 (a) (1) and (2).[4] Section 58 (d) (2) and (3) provides:

SEC. 58 (d) (2). AMENDMENT OF DECLARATION.—An individual may make amendments of a declaration filed during the taxable year under this subsection, under regulations prescribed by the Commissioner with the approval of the Secretary. If so made, such amendments may be filed on or before the fifteenth day of the last month of any quarter of the taxable year subsequent to that in which the declaration was filed and in which no previous

---

[1] SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION.
Except as provided in section 276—
(a) GENERAL RULE.—The amount of income taxes imposed by this chapter shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.
[2] SEC. 294 (d) (2). SUBSTANTIAL UNDERESTIMATE OF ESTIMATED TAX.—If 80 per centum of the tax (determined without regard to the credits under sections 32 and 35), in the case of individuals other than farmers exercising an election under section 60 (a), or 66⅔ per centum of such tax so determined in the case of such farmers, exceeds the estimated tax (increased by such credits), there shall be added to the tax an amount equal to such excess, or equal to 6 per centum of the amount by which such tax so determined exceeds the estimated tax so increased, whichever is the lesser. * * *
[3] SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION.
(f) For the purposes of subsections (a), (b), (c), (d), and (e), a return filed before the last day prescribed by law for the filing thereof shall be considered as filed on such last day.
[4] SEC. 58. DECLARATION OF ESTIMATED TAX BY INDIVIDUALS.
(a) REQUIREMENT OF DECLARATION.—Every individual (other than an estate or trust and other than a nonresident alien with respect to whose wages, as defined in section 1621 (a), withholding under Subchapter D of Chapter 9 is not made applicable) shall, at the time prescribed in subsection (d), make a declaration of his estimated tax for the taxable year if—
(1) his gross income from wages (as defined in section 1621) can reasonably be expected to exceed the sum of $5,000 plus $500 with respect to each exemption (except his own) provided in section 25 (b) ; or
(2) his gross income from sources other than wages (as defined in section 1621) can reasonably be expected to exceed $100 for the taxable year and his gross income to be $500 or more.

amendment has been filed, except that in the case of an amendment filed after September 15 of the taxable year, it may be filed on or before January 15 of the succeeding taxable year. Declarations and amendments thereof shall be filed with the collector specified in section 53 (b) (1).

(3) RETURN AS DECLARATION OR AMENDMENT.—If on or before January 15 of the succeeding taxable year the taxpayer files a return, for the taxable year for which the declaration is required, and pays in full the amount computed on the return as payable, then, under regulations prescribed by the Commissioner with the approval of the Secretary—

.(A) If the declaration is not required to be filed during the taxable year, but is required to be filed on or before such January 15, such return shall, for the purposes of this chapter, be considered as such declaration; and

(B) If the tax shown on the return (reduced by the credits under sections 32 and 35) is greater than the estimated tax shown in a declaration previously made, or in the last amendment thereof, such return shall, for the purposes of this chapter, be considered as the amendment of the declaration permitted by paragraph (2) to be filed on or before such January 15.

The petitioner was not required to file a final return by January 15. In order to avoid a penalty for underestimating his tax he had but to amend his previous declaration of estimated tax by January 15 or within any extension of time for so doing granted by the Commissioner. It was not necessary for him to file a final return in order to avoid penalty. The taxpayer is given the right to amend his previously filed declaration of estimated tax by filing a final return on or before January 15 or to file an amended estimate by said date at his option. Section 58 (d) (3) (B) is beneficial to taxpayers who find they have underestimated their income tax, as they can by filing a final return by January 15 dispose of two requirements of the Code by one act. When a taxpayer elects to file a final return by January 15, it becomes both his final return and an amended declaration of tax.

The option given by section 58 (d) (3) (B) does not change the filing date for the return of a taxpayer on a calendar year basis. Under section 53 (a) (1), the last day prescribed for filing a return made on the basis of a calendar year is March 15 following the close of the calendar year. For the purpose of the commencement of the statute of limitations, section 275 (a) of the Internal Revenue Code, section 275 (f) clearly and unqualifiedly provides that a return filed before the last day prescribed by law shall be considered filed on such last day. Even though section 58 (d) (3) (B) was enacted after section 53 (a) (1), we cannot find any suggestion in the committee reports of the House and Senate and we do not think that Congress intended to amend the provision of section 53 (a) (1) so as to accelerate the time for filing a final return. Both acts can live together. They are in no way inconsistent. Section 58 (d) (3) (B) does not amend section 53 (a) (1). The statute of limitations began to run on March 15, 1948.

We therefore hold that respondent's notice of deficiency, made within 3 years subsequent to March 15, 1948, was timely and is not barred by the provisions of section 275.

The second issue involves the proper apportionment between husband and wife of a bonus received at the end of the year in a state which adopted a community property law during the taxable year. Petitioner apportioned income on the *when received* basis whereas respondent apportioned the bonus on the *when earned* basis.

Petitioner contends that no employee has any contract or vested right with the company entitling him to a bonus or allowing him to rely on the receipt of a bonus; that he is entitled only to his salary; that the payment of the bonus is entirely in the discretion of the board of directors of the company, depending upon the company having sufficient earnings and available cash for that purpose; that no employee may receive a bonus unless he is working for the company at the end of the year; that the company was not financially able to pay a bonus in September 1947 and, therefore, since the bonus was not declared payable until after September 7, 1947 (the effective date of the Nebraska Community Property Act) he may apportion it equally between himself and his wife. Respondent argues that the inception of the right to the bonus accrued ratably over the year and therefore the amount received by petitioner as bonus should be apportioned between separate property and community property on the same basis. Respondent further maintains that petitioner has failed to carry the burden of proof in that he has not offered evidence on the basis of which an allocation may be made between bonus and salary, and income which is separate property or community property. We do not agree with respondent.

Considering respondent's second argument, we find it is possible to determine from petitioner's return that portion of reported income representing the separate income of petitioner and that portion which represents community property. Since petitioner and his wife each are entitled to equal portions of income under the community property law, the separate property of petitioner is determined simply by subtracting the wife's reported income from his reported income ($19,088.98 − $10,111.02 = $8,977.96). We find separate property to be $8,977.96 and community property to be $20,222.04. Since the separate property is all salary, petitioner having determined the bonus was community property, we find the petitioner's salary to be $1,100 per month for 8 months and 7 days before the effective date of the community property law ($8,977.96 ÷ 8 mo. 7 days). The petitioner's salary was $13,200 and the bonus was $16,000.

Determination of this issue turns upon the date when the initial right to the bonus was acquired. See *Edwin C. F. Knowles*, 40 B. T.

A. 861. The respective rights of husband and wife are determined by the law in effect when the bonus vested.[5]   See McKay, Community Property, 2d ed., par. 517, p. 352, where it is stated:

The reader should notice that it is assumed the initial right of the series is of such a character that it is recognized as valid in law or equity and is available against some one. *It must be more than a mere unenforceable claim.* [Emphasis supplied.]

Respondent argues that petitioner's initial right to a bonus was acquired at the beginning of the year, therefore the bonus accrued ratably over the year and the accrued proportion thereof to the effective date of the community property law was separate property. We do not find any ground upon which the petitioner could claim he possessed a vested right to a bonus prior to the effective date of the community property act. The resolution of the Board set out a specific formula for determination of the amount payable. First, adjustments had to be made in merchandise inventories so as to reflect all obsolescence and other losses. After this was done a sufficient amount was deducted from earnings to provide a sum totaling 6 per cent of the book value of all funds and other assets which were used strictly in the conduct of the operating divisions of the company. Next, it was necessary to deduct an amount large enough to pay all of the company's income taxes. At this point the formula finally reached the place where profits were *merely distributable* to employees and officers. If the formula did not produce an amount for distribution, then no bonus could be paid. Further, paragraph (f) of the resolution raises doubts as to a regular yearly bonus being declared even though an amount might be found to be available for that purpose. That part of the resolution provides that the plan may "be amended and changed at the discretion of the Board from year to year as seems necessary for the best welfare of the Company." The records show that amendments had been made for the years 1946 and 1947 when the bonuses were cut to $100,000 for 1946 and $106,000 for 1947 after the amount available had been tentatively determined as being between $170,000 and $180,000 for each of the years. In addition to the aforementioned requirements, the company must have adequate cash available for the bonus. It is possible for the company to have earned enough money to pay a bonus and yet not have available cash to pay it. This might be true at any time

[5] Revised Statutes of Nebraska, 1947, sec. 42–603. Community or common property. All property acquired by either the husband or wife during marriage and after September 7, 1947, except that which is the separate property of either as defined in sections 42–601 and 42–602, shall be deemed the community or common property of the husband and wife, and each shall be vested with and undivided one half interest therein ; and all the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains unless the contrary be satisfactorily proved.

when the company is in the process of acquiring a large inventory or accumulating cash for expansion. Without doubt it was within the absolute discretion of the board of directors to amend the plan at any time to the effect that no bonus be paid even though application of the formula resulted in an amount distributable as bonus and even though cash was available for the purpose.

This record does not indicate the existence of a contract by the company to pay a bonus to the petitioner either written or oral. If petitioner at any time during 1947 acquired a vested right to a bonus such a right would therefore, under these facts, have had to devolve to him through an offer by the company and an acceptance by him of that offer. We have here no offer by the company which might form the basis for such acceptance. The resolution upon which payment of the bonus is based left too much discretion in the board of directors to permit petitioner to say at any given time that the company had agreed to pay him a bonus of a fixed or even determinable amount. Courts have held such vagueness and indefiniteness to constitute a fatal defect in bonus agreements. *Varney* v. *Ditmars*, 111 N. E. 822.

Aside from that question, however, it is apparent that if a bonus contract ever came into existence during 1947 it did so only after all of the conditions precedent had been met to the satisfaction of the board of directors. *Campbell* v. *Holcomb*, 72 P. 552. One of these conditions, an invariable one, was the requirement that the petitioner be employed by the company at the end of the calendar year. Only by continuing in his employment until that time could petitioner complete a possible bonus agreement by thus accepting the company's offer. See *Alice M. Macfarlane*, 19 T. C. 9; *Zwolanek* v. *Baker Mfg. Co.*, 137 N. W. 769, 772. It is true petitioner might on this theory be said to have earned the bonus ratably over the entire year, but on no theory of the law of contract as applied to these facts can he be said to have acquired even an initial vested right thereto prior to the end of the calendar year. Before that time petitioner had a vested right to a salary only. Before that time no contract to pay a bonus existed. Indeed, it has been held that where an *express contract* to pay a bonus in the event that certain precedent conditions are met to the satisfaction of the promissor, thereby leaving the ultimate determination to pay or not to pay within the discretion of the promissor, the right to receive the bonus does not accrue even though the promisee fully performs the contract so far as the express terms thereof are concerned. He must in order for his right to accrue establish the fact that the conditions were met *to the satisfaction of the promissor*. *Campbell* v. *Holcomb, supra.*

Respondent argues that it is uniformly held that the inception of the right to receive compensation is the service performed, citing the following cases: *Asher* v. *Welch* (S. D., Cal. 1938), 24 A. F. T. R. 1091; *Howard Veit*, 8 T. C. 809; *Claude R. Fooshe*, 46 B. T. A. 205, revd. (C. A. 9, 1942) 132 F. 2d 686; *C. J. Wrightsman*, 40 B. T. A. 502, affd. (C. A. 5, 1940) 111 F. 2d 227; *Robert H. Lord*, 30 B. T. A. 425; *Sara R. Preston*, 35 B. T. A. 312. The *Asher* case is distinguishable as the taxpayer therein had received a bonus in 1930 from a company for which he had worked many years and had retired from in 1928. There the bonus was separate property as all employment had been in Illinois (a non-community property state) and taxpayer did not become a resident of California (community property state) until he had retired. The *Veit* case is distinguishable on the facts from the instant case as the right to the income and the amount of the income there became vested while petitioner was a resident of a non-community property state. The *Fooshe* case is also distinguishable on the ground that there a written contract of employment was involved. The contract gave petitioner an immediate vested right in commissions dependent only upon sales of insurance policies. Here the time of vesting of petitioner's right to a bonus is the crux of the case. The *Wrightsman* case is distinguishable on the facts as the right to a bonus was not there an issue. The taxpayer in that case was to receive no salary until the end of the business year. Salary, not bonus, was at issue. The facts of the *Lord* and *Preston* cases distinguish them from the present case as there the taxpayer had a contract which gave him vested rights which the present petitioner did not have. Not one of the cases cited by respondent is in point here.

We therefore hold that petitioner had no enforceable vested right, initial or ultimate, to the receipt of the bonus here involved prior to September 7, 1947.

Petitioner has properly apportioned his income for the taxable year 1947.

*Decision will be entered under Rule 50.*