Robert R. Williams, Jr., and Betty Lynch Williams v. Commissioner.
Williams v. Commissioner
Docket No. 52322.
United States Tax Court
T.C. Memo 1955-109; 1955 Tax Ct. Memo LEXIS 228; 14 T.C.M. (CCH) 373; T.C.M. (RIA) 55109; April 29, 1955
*228 1. Petitioners filed a final income tax return for 1948 in January 1949. They contend that the statute of limitations began to run for the taxable year 1948 on the date of such filing. Respondent mailed a notice of deficiency on January 4, 1954. Petitioners signed consent agreements on February 29, 1952, and January 15, 1953, extending the period for assessment until June 30, 1954, subject to petitioners' contention that the statute of limitations had already run by February 29, 1952. Held, the statute of limitations began to run on March 15, 1949, and the consent agreements executed within the permissible period for assessment extended such period until June 30, 1954. Respondent's notice of deficiency was timely sent. 2. Williams' practice of law consisted largely of insurance adjusting. In this connection, he was required to own and operate an automobile. He also did other traveling away from home in conjunction with his practice of law. Held, expenses incurred in the operation of an automobile and for other traveling away from home on business are allowable as ordinary and necessary business expenses to the extent not reimbursed. Amounts allowable determined. 3. Williams, *229 a lawyer, resumed active practice after returning from service in the United States Navy. With a view to maintaining and increasing his law practice, he incurred various expenses during the taxable years in question. The expenses included gifts, extensive entertainment (at home, at country clubs and at a summer cottage), club dues in various organizations, and expenditures for travel to and attending meetings of these organizations and a legal clinic. Held, that such expenditures are deductible to the extent that they were ordinary and necessary in maintaining and increasing his law practice. Amounts allowable as deductions determined. 4. Held, depreciation on summer cottage and equipment disallowed because of failure to meet the burden of proof of cost basis or probable life of separate items, and because of failure to meet the burden of proof of the extent to which such cottage and equipment was used for business purposes. 5. Respondent increased petitioner Betty Williams' net distributable partnership income from a self-service home laundry business on the basis of certain adjustments in depreciation claimed on equipment used in that business. Held, petitioners have not met *230 the burden of proving error in the respondent's determination. Robert R. Williams, Jr., Esq., 107 Evelyn Place, Asheville, N.C., for the petitioners. Hubert E. Kelly, Esq., for the respondent. FISHER
The respondent determined deficiencies in the Federal income tax of petitioners for the taxable years 1948 and 1949 in *231 the amounts of $1,130.14 and $1,454.28, respectively. The issues presented are: (1) whether the assessment of a deficiency is barred by the statute of limitations for the year 1948; (2) to what extent, if any, in 1948 and 1949, expenses (including those for gasoline, oil, repair and maintenance, depreciation and insurance) sustained in the operation of an automobile and, in 1949, other traveling expenses while away from home were incurred in carrying on petitioner's professional activity as an attorney; (3) to what extent, if any, expenses for entertaining, gifts, club dues in various organizations, and expenses of attending meetings and conventions of these organizations and a legal clinic, were ordinary and necessary expenses of petitioner's professional activity; (4) the amount of depreciation, if any, allowable on a summer cottage and equipment; and (5) whether net distributable partnership income was properly increased on the basis of certain adjustments for depreciation on washing machines and other equipment used in the operation of a self-service home laundry. Petitioners do not contest other adjustments made by the respondent by appropriate assignment of error. Memorandum *232 Findings of Fact and Opinion Petitioners are husband and wife residing in Asheville, North Carolina. For the taxable years 1948 and 1949, petitioners filed joint Federal income tax returns with the then collector of internal revenue for the district of North Carolina. Petitioners filed their Federal income tax return for 1948 in January 1949. On February 29, 1952, petitioners entered into a consent agreement (Form 872) extending the period of limitation on assessment to June 30, 1953. At the top of this consent agreement was typed a proviso, insisted upon by petitioners, as follows: "Provided the Statute of Limitations ( Sec. 275, Internal Revenue Code) has not heretofore fully run as contended by the taxpayers and without waiving this exception to the Government's contention therein relative to the tax return hereinafter referred to." On January 15, 1953, petitioners executed another consent agreement, subject to the same conditions as their previous agreement, extending the period for assessment to June 30, 1954. Respondent issued the deficiency notice here appealed on January 4, 1954. Petitioner Robert R. Williams, Jr. is an attorney who has been engaged *233 in the general practice of law in Asheville, North Carolina, since 1938, except for a period of five years from 1941 to 1946 during which he was a member of the armed forces in the United States Navy. For the taxable years 1948 and 1949, Williams was a partner with his father, Robert R. Williams, Sr., in the law firm of Williams and Williams which engaged in general trial and insurance practice. A large part of Williams' work from 1947 and during 1948 and 1949 was in connection with that part of the firm's practice which consisted of insurance adjusting. Williams was assigned the task of investigating insurance claims, contacting witnesses, and effecting insurance adjustments. This work involved a substantial amount of local travel and petitioner was required to have an automobile at his disposal for these purposes during office hours and also to meet the exigencies of calls which occurred almost daily, not only during the normal business day, but also at odd hours of the night and early morning. To satisfy these needs Williams purchased a new Nash in 1947 for $2,100, which he used in connection with his business to whatever extent required. In addition, Williams often traveled by *234 car to several counties of the state, other than that in which he resided, in conjunction with the preparation of cases for trial. The car was petitioner's own personal property, and in addition to business use, was also used by petitioner to travel to and from work, as well as for pleasure at other times. His wife also used the car. During the taxable year 1948, Williams drove his automobile over 24,000 miles. In 1948, he paid bills for gasoline and oil by check each month to the Shell Oil Company totalling $601.04. He also incurred maintenance expenses for this same period in the total amount of $243.83, paid by check to the Ed Orr Motor Company. The total amount of his expenses in 1948 for gasoline, oil, repairs and maintenance was $844.87. Some time in the early part of 1949, Williams traded his 1947 Nash, which had then been driven over 40,000 miles, and purchased a new 1949 Nash. We find as an ultimate fact that the basis to be attributed to the new car was $2,100. Williams used the new automobile during 1949 in the same manner as he did the 1947 Nash during 1948. For the year 1949 Williams made payments for gas and oil to the Shell Oil Company, by check, each month, incurring *235 a total expense of $466.93. Payments in 1949 to the Ed Orr Motor Company for repairs and maintenance totalled $129.46. In addition, Williams paid $28.36 to B & B Tire Service and $35.92 to Boswell Tire Service. These amounts represent the total expenses, other than those for insurance and depreciation, incurred by Williams in the years 1948 and 1949 in the operation of his automobile for both business and personal purposes. In connection with the use of petitioner's automobile, Williams and Williams had an agreement with some of their clients for a mileage allowance of eight cents per mile. With other clients, the firm worked on a straight fee basis, bearing their own mileage expenses. For the year 1948 Williams was reimbursed by the firm in the amount of $308.64, in part for expenses incurred by him in the use of his automobile in connection with the business of the firm, and in part for other travel expenses hereinafter described. Williams claimed a deduction of $285 for automobile expenses incurred in business in 1948 in excess of expenses for which he was reimbursed. In 1949, Williams was reimbursed for automobile and other travel expenses (hereinafter described) in the amount *236 of $774.10. Williams claimed a deduction in 1949 of $828.32 in excess of the expenses for which he was reimbursed for both automobile and other travel expenses, without segregation. In his returns for 1948 and 1949, williams claimed a deduction for automobile insurance in the amounts of $45 and $39.95, respectively. In each of said years he claimed a deduction of $500 as depreciation, in 1948 on the 1947 Nash used in his business, and in 1949 on the basis of the use of the 1947 and later the 1949 Nash cars in his business. Petitioner based his claim on an estimated useful life of each of the automobiles of four years. We find as a fact that the amount of $22.50 for 1948 and $19.97 for 1949 are to be attributed to insurance expense growing out of business use of said automobiles and that depreciation in the amount of $262.50 is to be attributed to such use for each of said years. We further find as a fact that the extent to which Williams used his automobile in pursuit of his professional activity for each of the years 1948 and 1949 was 50 per cent. During 1948 Williams incurred other traveling expenses in connection with his law practice in the total amount of $285, including *237 $75 for travel and incidental expenses on a trip involving certain anti-trust litigation, $60 for a trip to Durham, North Carolina, to take a deposition, and $150 for a trip to Charleston, South Carolina, in connection with a will case. These expenses were solely for business purposes. In 1949, the petitioner also incurred expenses for trips, by means other than by his automobile, in connection with his profession and for personal reasons. A total of $300 was spent on trips undertaken solely for business purposes. Other expenses totalling $500.34 were incurred on a trip which was undertaken partly for business and partly for personal pleasure. It was Williams' practice whenever possible to combine his vacation trips with some business that had to be transacted outside of Asheville. In September 1949, Williams and his wife took a trip to New York combining business and pleasure and spending $500.34, $150 of which Williams deducted as attributable to business. The New York trip lasted for one week during which one day was consumed by Williams in connection with business of the firm and during which Williams made a trip by train to Boston and then by bus to Hopedale, Massachusetts. *238 The cost of traveling back and forth from New York to Hopedale was $35. We find as a fact that the portion of the expense to be attributed to said trip for business purposes was $125.08. After returning to Asheville from his service in the United States Navy, Williams became quite active in civic and social affairs. This activity was part of a deliberate and planned campaign by Williams to re-establish himself in his profession in North Carolina, and to maintain and increase his practice. He joined numerous clubs and civic organizations, and as a result of his effort, was elected an officer of several of them. His activities were partly social and personal, and partly for the express purpose of building up his law practice. His law business did increase materially and his civic and social activities were material factors in this increase. In 1948, Williams was a member of a number of such organizations and paid out various amounts for dues therein and incidental expenditures. The total amount of the deductions in this respect on petitioners' 1948 return was only a little over half of said expenditures. The actual deductions on the 1948 return (all of which were disallowed by *239 respondent) were as follows: Kiwanis Club
$ 80.00
American Legion and 40/8
8.00
Executive Club
10.00
Wild Life Club and Hunting Conserva-
tion Club
23.00
Junior Chamber of Commerce
12.00
Total (disallowed by respondent)
$133.00
We find that a total of $110 of the foregoing items (representing all but the Wild Life and Hunting Conservation Club) was proximately related to and constituted ordinary and necessary expenses of maintaining and increasing Williams' law practice. In 1949, Williams again paid out various amounts, totalling $214.50 for club dues and incidentals. Of this total, he claimed a deduction of $164.50 as miscellaneous business expense. The respondent disallowed the deduction except $25 for bar association dues. We find that an additional amount of $125 was proximately related to and constituted ordinary and necessary expenses of maintaining and increasing Williams' law practice. Said additional amount consists of the following: Kiwanis Club of Asheville $80
Asheville Junior Chamber of Commerce
12
Asheville Executive Club
10
International Association of Insurance
Counsel
15
American Legion
8
Total (disallowed by respondent) $125
*240 In further pursuit of Williams' aim to reestablish himself in his profession, petitioners, in 1948 and 1949, set about an organized plan of entertaining in accordance with which every Tuesday night for those two years they entertained from two to four couples at their home, with an understanding that no person would be invited back more often than once in six months. In addition, in the spring of both years, petitioners gave large cocktail parties at their home, inviting over three hundred guests. Furthermore, during periods of good weather, petitioners entertained two or more couples at their summer home on Lake Tahoma and occasionally invited representatives of insurance companies and others with whom Williams had professional relations to use the cottage during the week. Petitioners joined these latter guests on week-ends. In 1948, Williams deducted $1,300 for entertainment and gifts for business purposes, without segregation, on the basis of estimated expenses incurred for food and drink on the Tuesday nights devoted to entertaining, and on the week-ends spent at the cottage on Lake Tahoma, together with actual expenditures for gifts. No amount was eliminated by petitioners *241 for their own entertainment expense. We find as a fact that, of said expenditures for 1948, the total amount of $650 is to be attributed to ordinary and necessary expenses of the practice of law on the part of Williams. In 1949, Williams deducted $1,450 as a business expense for entertainment and business gifts, also without segregation, and on the same basis of estimated expenses of entertaining and actual expenditures for gifts. Again no amount was eliminated by petitioners for their own entertainment expense. We find as a fact that, of the said expenditures for 1949, the total amount of $725 is to be attributed to ordinary and necessary expenses of the practice of law on the part of Williams. During 1949, the petitioners belonged to the two country clubs in Asheville, namely, the Asheville Country Club and the Biltmore Forest Country Club. Both of these country clubs have swimming pools, golf courses, and club houses available for their members and a limited number of guests of each member. Petitioners deducted $390.12 on their 1949 Federal income tax return as a business expense for dues and other expenses for entertaining guests at these country clubs. Neither of petitioners *242 plays golf, and neither used the swimming facilities of the clubs in 1949. Petitioners' children, however, used the swimming facilities of the Asheville Country Club, but did not make any use of the Biltmore Club. Williams used the clubs to entertain clients and other business associates, but petitioners also attended social functions held there, and made some general use of the club facilities for their own pleasure. We find as a fact that $135 of the total of said expenditures for 1949 is to be attributed to ordinary and necessary expenses of the practice of law on the part of Williams. Both in 1948 and in 1949 Williams attended various conventions of organizations of which he was a member and incurred expenses which he deducted as business expenses in the amount of $600 in 1948 and $500 in 1949. In 1948 petitioner attended meetings of the Junior Chamber of Commerce in Raleigh and Fayetteville, the Young Democrats Club, and American Legion conventions in Raleigh, Winston-Salem, and Miami, Florida, incurring a total expense of $600. In 1949, petitioner incurred expenses of $150 in attending a legal clinic at Duke University, $250 in attending four meetings of the Young Democrats *243 Club, and $100 attending the state American Legion convention. Many of the younger lawyers and businessmen belonged to the Junior Chamber of Commerce, the Young Democrats and the American Legion, and Williams made and maintained contacts with such men through his association with these organizations during 1948 and 1949, and a substantial amount of his practice, including reference business, was attributable to the contacts he made as a member of such organizations. We find as a fact that for the years 1948 and 1949, the respective amounts of $200 and $165 of said expenditures are to be attributed to ordinary and necessary expenses of the practice of law on the part of Williams. Early in 1948, petitioners acquired a stake in a five-acre tract on Lake Tahoma. Petitioners built a cottage on their lot consisting of a living room, bedroom, kitchen, two baths, and a screened-in porch. They also built a pier and a bath house. The cottage was paneled in pine, fully electrified and, including plumbing and a gas stove, was completely furnished. Petitioners also used two boats and an outboard motor for the entertainment of their guests. The total cost of all of these items to petitioners *244 was $7,500. In each year 1948 and 1949 petitioners deducted $500 for depreciation of the cottage (including all of its furnishings), the boats, pier, and the outboard motor as property used by petitioners for business entertainment. The deduction was based on an estimated useful life of 15 years. During part of the years 1948 and 1949, petitioner Betty Williams entered into a partnership to operate a self-service home laundry under the name of Wishy-Washy. The partnership filed Federal income tax returns for the years 1948 and 1949. The partnership had acquired thirty pieces of equipment, including twenty Bendix washers, two driers, two ironers, a mechanical pump and some other miscellaneous equipment, reporting a total cost therefor of $4,500 on the 1948 partnership return. Plumbing and heating facilities were also installed at a reported cost of $2,500. The business continued to operate from May 1, 1948 until June 1, 1949 when it was sold and the partnership was dissolved. In each of the years 1948 and 1949, depreciation on the washers and other equipment and the plumbing and heating facilities was taken by the partnership for that portion of the year during which the business *245 was operated. Depreciation as claimed was based on an estimated useful life of two years for the washers and other equipment, and an estimated useful life of four years for heating and plumbing facilities. In 1948, depreciation in the amount of $2,250 was deducted in the partnership return for the washers and other equipment, and $625 was deducted for the pl mbing and heating facilities. In 1949, $937.50 depreciation was deducted for the washers and other equipment, and $260.40 for the plumbing and heating facilities. In addition, $83.33 depreciation was deducted on certain new equipment purchased in 1949 for a reported price of $400 with an estimated useful life of two years. In 1949, the Wishy-Washy partnership was sold (including all of the equipment and whatever good will may have existed) for $9,500 without segregation as to the selling price of the items of equipment depreciated. Opinion FISHER, Judge: The respondent has disallowed numerous deductions claimed by petitioners as business expenses in their 1948 and 1949 Federal income tax returns. Before determining the correctness of the respondent's disallowance in these respects, we will consider the petitioners' contention *246 that the assessment of deficiencies in income tax for the year 1948 are barred under section 275(a) of the Internal Revenue Code. The deficiency notice here appealed was mailed on January 4, 1954. Petitioners filed a joint Federal income tax return for the taxable year 1948 some time in January 1949 in lieu of filing an amended declaration of estimated tax. (There is some dispute as to whether the return was filed on January 14, 1949, as contended by petitioners, or on January 26, 1949, as urged by respondent. As will appear from our discussion of petitioners' primary contention, the result will be the same whichever of the two dates is accepted as the date of filing.) Subsequently, petitioners entered into consent agreements on February 29, 1952, and January 15, 1953, extending the period of limitation on assessment first to June 30, 1953, and then to June 30, 1954. Each consent agreement was subject to an exception thereto, agreed to by the respondent, that petitioners contend that the period for assessment had already expired at the time of execution of the first consent agreement. Petitioners have never waived this exception and here present their contention *247 for our consideration. Petitioners argue that in accordance with section 58 of the Internal Revenue Code, they were required to file a final income tax return for 1948 by January 15, 1949, or be subject to penalty. They contend that the 1948 return was timely filed and that under this special circumstance, the three-year period for assessment must be calculated from the date of such filing. They argue that the period for assessment therefore had already expired on February 29, 1952, which was more than three years after the actual date of filing, in the light of the special condition included in the consent agreements. Petitioners' contention is the same as that urged by the taxpayer in Harry B. Sidles, 19 T.C. 1114 (1953) and there denied. The view we expressed there is controlling. Section 275(f) of the Internal Revenue Code provides that for the purpose of section 275(a) "a return filed before the last day prescribed by law for the filing thereof shall be considered as filed on such last day." Petitioners contend that this rule is inapplicable in case a return is filed in compliance with section 58. Section 58 requires, *248 in certain circumstances, the filing of an amended declaration of estimated tax and provides in respect thereto that - "* * * If on or before January 15 of the succeeding taxable year the taxpayer files a return, for the taxable year for which the declaration is required, and pays in full the amount computed on the return as payable, then, * * * "(A) If the declaration is not required to be filed during the taxable year, but is required to be filed on or before such January 15, such return shall, for the purpose of this chapter, be considered as such declaration; * * *" We think it is apparent that section 58 does not operate in any way to change the rule of section 275(f). As we stated in Harry B. Sidles, supra (p. 1119): "The petitioner was not required to file a final return by January 15. In order to avoid a penalty for underestimating his tax he had but to amend his previous declaration of estimated tax by January 15 or within any extension of time for so doing granted by the Commissioner. It was not necessary for him to file a final return in order to avoid penalty. The taxpayer is given the right to amend his previously filed declaration of estimated tax *249 by filing a final return on or before January 15 or to file an amended estimate by said date at his option. Section 58(d)(3)(B) is beneficial to taxpayers who find they have underestimated their income tax, as they can by filing a final return by January 15 dispose of two requirements of the Code by one act. When a taxpayer elects to file a final return by January 15, it becomes both his final return and an amended declaration of tax. "The option given by section 58(d)(3)(B) does not change the filing date for the return of a taxpayer on a calendar year basis. Under section 53(a)(1), the last day prescribed for filing a return made on the basis of a calendar year is March 15 following the close of the calendar year. For the purpose of the commencement of the statute of limitations, section 275(a) of the Internal Revenue Code, section 275(f) clearly and unqualifiedly provides that a return filed before the last day prescribed by law shall be considered filed on such last day. Even though section 58(d)(3)(B) was enacted after section 53(a)(1), we cannot find any suggestion in the committee reports of the House and Senate and we do not think that Congress intended *250 to amend the provision of section 53(a)(1) so as to accelerate the time for filing a final return. * * *" In respect to petitioners, the statute of limitations did not begin to run until March 15, 1949, and the consent agreements signed by petitioners were executed within the permissible period for assessment, extending that period finally until June 30, 1954. The issuance of the deficiency notice on January 4, 1954, was fully within the extended period for assessment and was not barred under section 275(a). The second issue presented is the extent, if any, to which expenses incurred by Williams, in 1948 and 1949, in the operation of an automobile and, in 1949, for other traveling expenses (including meals and lodging) while away from home were sustained in carrying on his practice of law. Whether Williams' expenditures for the operation of an automobile were ordinary and necessary to the carrying on of his business within the meaning of section 23(a)(1) of the Internal Revenue Code is a factual question which depends on the nature and requirements of his particular professional activity. Welch v. Helvering, 290 U.S. 111 (1933); James Schulz, 16 T.C. 401 (1951). *251 Williams' practice consisted largely of insurance adjusting and in this connection he was required to do a substantial amount of local traveling in the course of investigating insurance claims, contacting witnesses and generally in making settlements. As an insurance adjuster he was also obligated to respond promptly to accident calls at any time and he is therefore required to keep an automobile at his disposal at all times. We think it is clear that it was both ordinary and necessary for Williams to operate an automobile for business purposes. We must next consider the extent to which Williams utilized the automobile during the years in question in carrying on his business. It is clear from the record that the automobile, owned by Williams personally, was used by him during 1948 and 1949 not only in connection with his business, but also to travel to and from work each day and for his own and his family's pleasure at other times. In addition, Williams permitted his wife to use the car for her own and her family's personal purposes in the evening and on week-ends. Williams' total expense for operation of an automobile for both business and pleasure in 1948 was $601.04 for gasoline *252 and oil, and $243.83 for repairs and maintenance, and in 1949, $466.93 for gasoline and oil, $129.46 for repairs and maintenance, and $64.28 for tire service. In each of the years he also incurred expenses for insurance. Depreciation in relation to business use is also a factor. Williams drove over 24,000 miles during each of the years 1948 and 1949. On the basis of the evidence presented we have determined that for each of the years in question Williams' use of an automobile for business purposes was substantiated to the extent of 50 per cent of his total use. This is, of course, an approximation, but even on the basis of the rather meager evidence submitted, we think it is fair and reasonable under the rule of Cohan v. Commissioner, (C.A. 2, 1930) 39 Fed. (2d) 540. Williams, therefore, incurred business expenses of $422.43 in 1948 for gasoline, oil, repairs and maintenance, and $330.33 in 1949. Such expenses, however, constitute allowable deductions only to the extent for which he was not reimbursed, and likewise may be allowed only to the extent claimed. During the year 1948, Williams operated a 1947 Nash with a cost basis of $2,100. We think, upon the evidence of *253 usage in the record, that an annual depreciation rate of 25 per cent is reasonable. Since his use of the car in business is limited to 50 per cent, the allowable depreciation must likewise be limited. We therefore hold that depreciation attributable to business use for 1948 is $262.50. Some time in 1949, Williams bought a new Nash, using the 1947 model for tradein purposes. The date of the purchase of the new car is not clear in the record. He asserts a new basis of $2,415, but the supporting evidence is vague and unsatisfactory. We think it reasonable, on the whole, to accept the amount of $2,100 as a basis for 1949 as well as for 1948, and we hold that for 1949 the depreciation attributable to business use is again $262.50. Regarding Williams' deductions for insurance, there is nothing in the record to indicate whether the amounts deducted in the years 1948 and 1949, $45 and $39.95, respectively, were the total amounts expended by him for insurance on the automobile or only that portion of the total amounts spent which Williams considered as attributable to the use of the automobile in his business. In the absence of more definite evidence, we must hold that the above sums were *254 the total insurance expense for the two years. Since we have determined that Williams did use his automobile in connection with his business, to the extent of 50 per cent of its total use, we attribute 50 per cent of the amounts above set forth to business use, or $22.50 for 1948 and $19.97 for 1949. We next come to the question of traveling expenses other than automobile expense. Such other traveling expenses while away from home for the year 1948 incurred in connection with trips solely for business purposes have been substantiated only in the amount of $285. Additional expenses claimed were not substantiated. We do not think that any portion of an expense of $75 incurred in 1948 for a trip to Miami, Florida, for the combined purpose of taking certain depositions, attending an American Legion convention and a week's vacation may be considered as a business expense, since petitioner's primary purpose in taking this trip was other than business, and we have no measure on the basis of which we may estimate or attribute any portion thereof to business expense. In 1949, petitioner sustained expenses for other travel while away from home and in connection with his business in the amount *255 of $300. He also incurred expenses of $500.34 on a trip undertaken for both business and pleasure. The business which he transacted during the course of this latter trip consumed one day of the seven for which the trip lasted and required a side trip from New York to Hopedale, Massachusetts. Upon the facts, we allow petitioner a deduction of $125.09, which is one-fourth of the total amount of these expenses, as attributable to business, representing $35 spent for the trip to Hopedale and a portion of the remaining expenses since petitioner would have had to undertake this particular trip at another time solely for business reasons and the amount allowed is properly attributable to carrying on his business activity. Again, as will appear from our summary, infra, the expenses for travel while away from home are allowed only to the extent to which Williams was not reimbursed. The record indicates that Williams was reimbursed in 1948 in the amount of $308.64 and in 1949 in the amount of $774.10 by the firm of Williams and Williams for expenses incurred by petitioner both in the operation of his automobile and for other expenses for travel while away from home incurred in connection *256 with petitioner's business. The extent to which Williams is entitled to any deduction for automobile expenses and other traveling expenses in the years in question is, as already indicated, limited to the net amount of such expenses for which he was not reimbursed. There is a further limitation upon allowance for 1948 in that the applicable assignment of error refers only to the disallowance of $285 for automobile expense other than depreciation. On the basis of the foregoing, we hold that petitioners are entitled to allowances for automobile and other travel expenses as follows: 1948
1949
Automobile expense other than deprecia-
tion: Gas, oil, repairs and maintenance
$422.43
$330.33
Insurance
22.50
19.97
Total of above (but limited to $285 in 1948 per
assignment of error)
$285.00
$ 350.30
Depreciation
262.50
262.50
Travel expense other than auto
285.00
425.08
$832.50
$1,037.88
Less: Reimbursement
308.64
774.10
Net allowance, auto and other travel expense
$523.86
$ 263.78
The third issue involves a group of expenditures for membership in social clubs, civic organizations, the American Bar Association, *257 and a veterans organization, including travel expenses to attend meetings; and also expenditures for entertaining and gifts. Our ultimate findings of fact dispose of these items from the factual standpoint and furnish the necessary basis for a Rule 50 determination. We think that, for the purpose of analysis in our a part of an over-all homogeneous picture. Upon his discharge from the Navy, Williams faced the serious problem of rehabilitating his law practice. In his opinion, the key to his objective was to make as many contacts as he possibly could with lawyers, adjusters and businessmen who might refer business to him or become clients. He embarked upon a deliberate and purposeful campaign to this end, at the same time admitting that his objectives were not unmixed, since personal social life for himself and his wife was a material and recognized factor. We think it is clear that, to the extent the expenditures were made for the purpose of maintaining and increasing his practice, and were reasonably calculated to accomplish that end, he is entitled to a deduction for ordinary and necessary expenditures. Such practices are hardly novel or unusual, particularly in those professions *258 in which soliciting or advertising are forbidden by ethical concepts. The difficult problem is rather to assess the amounts which may properly be allowed. Obviously, there are many intangible factors to be taken into consideration. It is clearly unrealistic to require that each particular expenditure be somehow attributed to a particular item of future business or to the establishment of a particular future business relationship. Some expenditures no doubt bore a much closer relationship to business than others. It would have been impossible for Williams, as it is impossible for this Court, to determine a precise and accurate sum to be allowed which could be supported by evidence establishing an exact amount and a detailed relationship of cause and effect. We think, however, that the whole record discloses a pattern which is not to be ignored merely because the practical solution is difficult. We realize, of course, that petitioners face the burden of proof, but we think they have met it by establishing a pattern, proving substantial expenditures, demonstrating results, and detailing surrounding circumstances from which a reasoned determination may be reached as to the appropriate *259 allowance to be made. Needless to add, where the proof is not precise, doubts must be resolved against the bearer of the burden of proof. Cohan v. Commissioner, supra. We have given due consideration to this viewpoint, but we do not think it means that we would be justified in disallowing the expenditures in toto. The next issue relates to disallowance of depreciation on a cottage at Lake Tahoma (including furnishings), and on boats, a pier, and an outboard motor which petitioners used in connection with the cottage. The cost is estimated, and there is no evidence establishing the amount of cost attributable to each item. Petitioners lumped the depreciation deduction in one figure, which was based upon an estimated useful life of 15 years. There is no satisfactory evidence supporting the estimate of useful life. In addition to all of the foregoing, there is no evidence in the record on which we may make a reasoned determination of the extent to which the property was used for business purposes. We hold, therefore, that petitioners have failed to meet the burden of proof on this issue, and we make no allowance for depreciation. The final issue arises out of partial *260 disallowance of depreciation on certain Bendix washers, ironers, extractors and dryers which were owned and used by the partnership known as Wishy-Washy, of which Betty Williams was a partner. The only evidence presented on this issue was the testimony of Robert R. Williams, Jr., who asserted that the useful life of the items was only two years. He based this on the assumption that the life of the items in question was ten years based on use of one hour a day, but that the equipment in question was used from eight to ten hours a day. There is nothing in the record to indicate that Williams had any personal knowledge of the normal useful life of the equipment, the conditions of actual use by Wishy-Washy, or the probable life or appropriate depreciation rate under the actual conditions of use. We must hold, therefore, that petitioners have failed to sustain the burden of proving error in respondent's disallowance. There were some additional adjustments in depreciation of Wishy-Washy equipment, but the assignment of error is limited to the issue which was discussed in the previous paragraph. Decision will be entered under Rule 50.