## CHARLES R. AND IRENE WILKERSON, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5423-63.   Filed August 16, 1965.

*William L. Raby*, for the petitioners.
*Eugene H. Ciranni*, for the respondent.

### OPINION

MULRONEY, *Judge:* Respondent determined a deficiency in the petitioners' income tax for 1961 in the amount of $204.56. The issue is whether Charles' retirement pay, based upon 30 years of active duty service with the U.S. Army, constitutes community income so that his wife would be entitled to claim a retirement income credit with respect to one-half of his retirement pay.

All of the facts have been stipulated and they are so found.

Charles R. and Irene Wilkerson, husband and wife, are residents of Tucson, Ariz. They filed a joint income tax return for 1961 with the district director of internal revenue at Phoenix, Ariz. Charles will hereinafter be called the petitioner.

Petitioner was born in Ohio in 1895 and lived there with his family until October 26, 1914, when he enlisted in the U.S. Army. He served on active duty from October 26, 1914, until November 30, 1944, and during that period he was stationed in the following places:

November 1914 to September 1915: Philippine Islands
September 1915 to January 1916: California
January 1916 to March 1916: Wyoming

March 1916 to February 1917: Old Mexico
February 1917 to December 1922: New Mexico
December 1922 to May 1941: Arizona
May 1941 to February 1942: Texas
February 1942 to February 1944: Alabama
February 1944 to November 1944: Arizona

At the time of his enlistment and the times of his subsequent reenlistments petitioner told the military authorities that his permanent home addresses were as follows:

Oct. 26, 1914: 48 Weller Street, Dayton, Ohio
Nov. 16, 1926: 545 Euclid Avenue, Dayton, Ohio
Nov. 16, 1929: 109 McLain Avenue, Morgantown, W. Va.
Nov. 16, 1941: 813 Southeast Second Avenue, Mineral Wells, Tex.
Aug. 1, 1944: 932 South Seventh Avenue, Tucson, Ariz.

The first three of the addresses listed above were the addresses of his parental family.

The U.S. Army transferred petitioner from Alabama to Arizona in February 1944 as a result of his request for transfer. He requested this transfer because he expected to retire from active duty after completing 30 years of service with the U.S. Army and he wished to be discharged in Arizona. In 1944 Army regulations provided that, if possible, a soldier expecting to retire after completing 30 years of service would be allowed to transfer to a post in the State in which he expected to live after retirement.

Paragraph 5 of the stipulation of facts is as follows: "On November 30, 1944, Charles R. Wilkerson retired from active duty in the United States Army. Since that time he has been receiving retirement pay from the United States Army based on his length of active duty service."

Petitioner and his wife, Irene, were married in Texas on August 6, 1941. At the time of her marriage Irene was a resident of Texas where she was employed as a domestic and Charles was serving on active duty with the U.S. Army in Texas. From February 1944 to the present time, petitioner and his wife have remained in the State of Arizona.

Petitioner has never possessed a driver's license issued by the State of Ohio, he has never owned property in that State, and he has never registered to vote there. During the period from December 1922 to May 1941, when he was stationed in Arizona, petitioner was issued numerous Arizona driver's licenses and he maintained several bank accounts there.

Petitioner reported retirement pay in the amount of $3,199.68 in the joint income tax return for 1961 filed by him and his wife. In computing the retirement income credit, petitioner attributed one-half

of the retirement pay, or $1,599.84, to his wife, which resulted in a credit of $204.56 attributed to the wife's portion of the retirement pay and a credit of $240 attributed to the petitioner's portion, or a total retirement income credit of $444.56 for 1961.[1]

Respondent made the following determination:

It is determined that you are not entitled to that portion of the retirement income credit claimed on your return applicable to Irene Wilkerson in the amount of $204.56 for the reasons that you have not established, (1) that the army retirement pay, upon which such credit is based, is community income, and (2) that Irene Wilkerson earned more than $600.00 in at least ten different calendar years prior to 1961.

It has now been stipulated that Irene Wilkerson received earned income in excess of $600 in each of 10 calendar years prior to 1961.

Section 37 of the Internal Revenue Code of 1954[2] allows a credit against income tax in the case of an individual who receives retirement income as defined in subsection (c) and who meets the eligibility requirements of subsection (b). Subsection (d) limits the amount of the retirement income of an individual that can be used in computing the credit. When a joint return is filed, the retirement income credit of each spouse eligible for such credit is separately computed. Sec. 1.37–1(d), Income Tax Regs. The regulations also provide that "If retirement income constitutes community income under community property laws applicable to such income, the retirement income credit of each spouse shall be separately computed by taking into account one-half of such amounts." Sec. 1.37–1(e), Income Tax Regs.

Under the Arizona community property law the character of property as separate or community property is determined at the time it is acquired. "All property, real and personal, of the husband, owned or claimed by him before marriage * * * is his separate property." Ariz. Rev. Stat. sec. 25–213. (A). "All property acquired by either husband or wife during the marriage, except that which is acquired by gift, devise or descent, or earned by the wife and her minor children while she lives separate and apart from her husband, is the community property of the husband and wife." Ariz. Rev. Stat. sec. 25–211. (A).

Respondent argues that Charles R. Wilkerson was domiciled in the State of Ohio, where he and his parents lived when he enlisted in 1914 and this domicile continued throughout his entire military career

---

[1] The joint return provides for a separate computation of the retirement income credit of the husband and the wife based upon the retirement income received by each spouse. The maximum amount of retirement income indicated on the 1961 return for the credit computation of each spouse is $1,200.

[2] All section references will be to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

and therefore none of his retirement pay can constitute community income. Respondent's argument on this point is not very persuasive. He admits Wilkerson could acquire a new domicile after his enlistment in the Army in 1914 but he argues the proof here is insufficient. *Clark* v. *Clark*, 71 Ariz. 194, 225 P. 2d 486, points out that a member of the Armed Forces residing in Arizona can acquire an Arizona domicile if he possesses the necessary intent to remain permanently in Arizona.

We conclude that, on this record, petitioner and his wife established their domicile in Arizona in February 1944, when petitioner was transferred to that State. In *Texas* v. *Florida*, 306 U.S. 398, 424, the Supreme Court stated that "Residence in fact, coupled with the purpose to make the place of residence one's home, are the essential elements of domicile." Petitioner requested the transfer to Arizona in February 1944 because he expected to live there after retirement and therefore wished to be discharged there. (Petitioner had spent some 19 years of his active service stationed in Arizona from 1922 to 1941.) Petitioner and his wife have remained in the State of Arizona from February 1944 up to the time of trial. We believe the facts are sufficient to show they were domiciled there as of February 1944, and we so find.

Respondent's main argument is that Army retirement pay represents additional compensation for past services, therefore it is the marital status and domicile of the serviceman during the 30-year period that determines whether the retirement pay is separate or community income. Specifically it is respondent's position that retirement pay is community property in the proportion which marital status and domicile in a community property State throughout the 30-year period bear to the entire 30-year period. Petitioner argues the separate or community character of the retirement pay is determined by the marital status and domicile on the date the soldier acquires the vested right to receive the retirement pay—in this case, November 30, 1944, when petitioner completed his 30 years of service. Specifically it is petitioner's contention that all of the retirement pay is community property if he is married and domiciled in a community property State when he completes his 30 years even though he was unmarried and not domiciled in a community property State during all of the 30-year period of his active service.

Respondent states on brief that "It has long been settled that retirement pay of military personnel constitutes additional compensation for past services rendered." Respondent cites *Alexis R. Paxton*, 8 B.T.A. 1105; *French* v. *French*, 112 P. 2d 235 (Cal. Sup. Ct.) ; and

*Hoeppel* v. *Westover*, 79 F. Supp. 794. The first two cases cited above hold generally that the retirement pay of military personnel is not exempt from tax as a pension but is subject to Federal income tax. *French* v. *French, supra*, is a California divorce action where the wife sought a decree against a serviceman fixing the retirement pay he would receive if he served 14 more years in the U.S. Navy, as community property. The court held against the wife on the issue.

It is true, as respondent argues, that retirement pay of military personnel is predicated on the performance of past services. But we are not so sure that it logically follows that the character of retired pay should be determined on the basis of domicile and marital status of the serviceman at the time he performed the past services. The source of retirement pay of a serviceman is not some fund to which he has made contribution. It is an appropriation made each year by Congress. The serviceman gains no right to receive anything until he serves the full 30 years. When we consider the nature of the serviceman's right to receive retirement pay we are inclined to petitioner's view: That a serviceman's retirement pay cannot be said to be "acquired" within the meaning of the community property statute until the right to receive it is vested in him. The retirement pay should be initially characterized as separate or community on the basis of domicile and marital status at the time the serviceman completes the required years of service and receives the absolute right to retirement pay. In this case, that date would be November 30, 1944, at which time petitioners were a married couple domiciled in Arizona.

Some justification for respondent's view is to be found in *Kirkham* v. *Kirkham*, 335 S.W. 2d 393 (Tex. Civ. App.). There, in a divorce action, an intermediate appellate court of Texas upheld a trial court's award to the wife of an interest in a serviceman's retirement pay as community property under Texas law. The record showed the serviceman's right to retirement pay had accrued by reason of 22½ years of active service, 10 years of which were served prior to his marriage. The award to the wife of 30 percent of the retired pay was upheld even though proper calculation with relation to the years of marital status would not support such an award. There is language in the opinion in *Kirkham* v. *Kirkham, supra*, which might be said to support respondent's position but the holding seems to be based to some extent upon the general equity power of the divorce court with respect to partition of community property.

We think the better rule is expressed in *Harry B. Sidles*, 19 T.C. 1114. There the State of Nebraska enacted a community property law effective in September 1947. We held a yearend bonus distributed

by a corporation to its married employee was community property. In the opinion we stated that the taxpayer might be said "to have earned the bonus ratably over the entire year, but on no theory of the law of contract \* \* \* can he be said to have acquired even an initial vested right thereto prior to the end of the calendar year."

Even though there are distinguishing facts between the *Sidles* case involving a corporate employee and a bonus payment and the instant case involving a serviceman and retirement payment, the cases cannot be distinguished on principle. In the *Sidles* case we pointed out one of the conditions was the requirement that the employee be employed by the corporation at the end of the calendar year and only by continuing his employment until that time could he receive a vested right to the bonus. And there we said: "Here the time of vesting of petitioner's right to a bonus is the crux of the case." The same considerations which led to our conclusion in the *Sidles* case are applicable here. Petitioner had to continue his active service for 30 years before he received any vested right to receive retirement pay.[3] It is as if on the completion of 30 years of service the serviceman becomes in effect entitled to a fund which will yield certain fixed payments over the remainder of his life. It is his domicile and marital status at the time of the completion of the 30 years of active service when his right to retirement income vested that determines the character of that retirement income. We have heretofore held that petitioner and his wife were domiciled in Arizona upon the completion of his 30 years of active service. We hold there should be no attribution of retirement income based on the serviceman's domicile and marital status during the 30 years of active service but the retirement income is all to be characterized as community income. It was "acquired" within the meaning of the Arizona community property law when the serviceman "acquired" a vested right to receive it.

*Decision will be entered under Rule 50.*

---

[3] The retirement in this case was under 10 U.S.C. sec. 947, which provided: "When an enlisted man shall have served thirty years either in the Army, Navy, or Marine Corps, or in all, he shall, upon making application to the President, be placed upon the retired list: \* \* \*"

In *James Dene* v. *United States,* 89 Ct. Cl. 502, 505, the court pointed out:

"Under the act of March 2, 1907, 34 Stat. 1217, the plaintiff had the absolute right when he had served thirty years, upon making application to the President, to be 'placed on the retired list, with seventy-five per centum of the pay and allowances he may then be in receipt of.' It has been frequently and repeatedly held by this court that this right of retirement is not subject to any discretion on the part of any superior officer, not even the Commander-in-Chief. As was said in the *Blackett case,* 81 C. Cls. 884, 891, 'the right granted by Congress was without condition and absolute.'

\*          \*          \*          \*          \*          \*          \*

"Having completed thirty years' service on December 6, 1914, the right of retirement became vested in plaintiff and he was entitled to be retired as of that date. \* \* \*"