SOLBERG, Respondent, v. METROPOLITAN LIFE INSURANCE COMPANY, Defendant: PORTER, Appellant.

*No. 247. Argued March 2, 1971.—Decided April 2, 1971.*
(Also reported in 185 N. W. 2d 319.)

748

For the appellant there were briefs by *Flynn, Flynn & Flynn,* attorneys, and *Thomas G. Hetzel,* of counsel, all of Racine, and oral argument by *Gerald T. Flynn.*

For the respondent there was a brief by *Plous, Boyle, Zievers & Plous* of Kenosha, and oral argument by *Frederick K. Plous.*

HANLEY, J.   Two issues are raised on appeal:

(1) Is the acknowledged father of an illegitimate child a "parent" within the provisions of the certificate of insurance involved; and

(2) Is the personal relationship between father and illegitimate daughter relevant to a determination of whether a parent-child relationship exists?

### *Status of plaintiff.*

What is being construed here is a federal statute. 5 USCA, page 26, sec. 8705 (a), provides that under the circumstances of this case the policy proceeds must go "to the parents of the employee." The word "parents" is not defined in the statute. The words "widow or widower" and "child or children" are also used in and undefined by that statute. However, there are several cases dealing with that statute [1] which have interpreted the "child-children" and "widow-widower" clauses. These cases are in conflict as to whether state or federal law should be employed in determining who is entitled to the policy proceeds. Those cases holding that state law applies have relied upon the traditional rule of conflicts

[1] *See* Annot. (1966), 10 A. L. R. 3d 803.

which states that rights created under an insurance policy are determined by the law of the state where the insured was domiciled when he applied for the policy.[2]

The purpose of sec. 8705 was to allow federal employees to be:

". . . 'better enabled by this low-cost life-insurance protection to carry out their responsibilities to their families.' . . ." *Metropolitan Life Ins. Co. v. Thompson* (3d Cir. 1966), 368 Fed. 2d 791, 793.

In the instant case, where no "dependents" of the insured are involved, we think it is appropriate to apply the general rule of resorting to state law in determining the status of the parties. Therefore, since it would not defeat the legislative purpose of sec. 8705 to apply Wisconsin law and since there is no federal law of domestic relations, we conclude that Wisconsin law is determinative of the outcome of this case.

Appellant asserts two alternative theories why a reversal, or at least a new trial, should be ordered in this case. Appellant first contends that as a matter of technical definition an illegitimate father does not occupy the status of parent under Wisconsin law. Appellant relies on sec. 48.02 (11), Stats., and this court's decision in *State ex rel. Lewis v. Lutheran Social Services* (1970), 47 Wis. 2d 420, 178 N. W. 2d 56.

If the court rejects the technical definition approach and decides the word "parent" should be given its common and ordinary meaning, then appellant requests a new trial wherein she would have an opportunity to produce evidence showing that the respondent never performed the duties nor exercised the privileges ordinarily and commonly associated with the meaning of the word "parent."

---

[2] Restatement, *Conflicts* 2d, ch. 8, p. 1, sec. 192 (Proposed Official Draft, Part III, 1969).

In support of the technical definition approach, appellant cites the *Lewis Case, supra,* and quotes from the final paragraph of the majority opinion, at page 434:

". . . (2) that the putative father of a child born out of wedlock does not have any parental rights; . . ."

We think the above quote is not applicable to the instant case. *Lewis* involved no written contract and the father in *Lewis* was "putative." The facts in this case are different.

Next, appellant relies on sec. 48.02 (11), Stats., which states:

" 'Parent' means either a natural parent or a parent by adoption. If the child is born out of wedlock, 'parent' means the mother."

If the statute were properly applicable to this case, then clearly the mother would be entitled to all the proceeds of the policy. However, we think it would be improper in this case to apply the definition of parent found in sec. 48.02 (11), Stats., for the following reasons:

First, all sections in ch. 48, Stats., are limited in their application by sec. 48.01 (2), wherein the legislature clearly states its intent and purpose in adopting ch. 48.

Sec. 48.01 (2), Stats., states that the intent of ch. 48 is to promote the best interests of the children of this state. In sec. 48.01 (3), the legislature declares:

"CONSTRUCTION. This chapter shall be liberally construed to effect the objectives in sub. (2). The best interests of the child shall always be of paramount consideration, . . ."

In this case, the purpose for which ch. 48, Stats., was enacted is impossible of fulfillment. The daughter is deceased and was not a "child" at the time of her death. Her best interests are not at issue in this case.

Secondly, sec. 48.02, Stats., begins by stating:

*"In this chapter* the following words and phrases have the designated meanings:" (Emphasis supplied.)

Sec. 48.02 (11), Stats., then gives the designated meaning of the word "parent." The words "In this chapter" quoted above clearly indicate that the definition of parent in ch. 48 was intended to apply only to matters related to ch. 48 and was not intended to encompass every legal dispute of any nature arising in this state.

The first principle which governs the court's approach to this contract is that the words of an insurance contract are to be given the common and ordinary meaning which they have in the minds of the average layman. *Mittelsteadt v. Bovee* (1960), 9 Wis. 2d 44, 100 N. W. 2d 376; *Charette v. Prudential Ins. Co.* (1930), 202 Wis. 470, 232 N. W. 848.

On the basis of the above rule alone, it would be improper to resort to technical and statutory definitions.

We must determine, what is the common and ordinary meaning of the word "parent" as used in this life insurance contract?

Both the trial court in its decision and the respondent on this appeal rely on case law and other authorities which state that the word "parent" or "parents" means the natural parents or one who "begets." There can be no doubt but that the word "parent" does carry that meaning in common parlance. But the question is whether that is all the word means. We think the word "parent" in common and ordinary usage comprehends much more than the mere fact of who was responsible for a child's conception and birth. The word is also commonly understood to describe and refer to the person or persons who share a mutual love and affection with a child and who supply the child support and maintenance, instruction, discipline and guidance.

*Admissibility of evidence as to relationship between father and deceased insured.*

At trial the appellant attempted to submit evidence showing that there had never been a parent-child relationship between the father and the daughter. This evidence was ruled immaterial to the issue. However, appellant did make an offer of proof in which the mother's attorney stated that, if allowed, she would submit evidence showing that the father never knew his daughter on a personal basis and only saw her once after he left home in 1953. That was upon graduation from high school when the father had to be introduced to the daughter. Appellant's counsel further offered to prove that the father never made any voluntary support payments and that the payments he was ordered to make under the adjudication of paternity were substantially in arrears.

We think the evidence relating to the nature of the relationship between the father and daughter in this case was highly probative of the issue, the issue being whether or not the respondent was a "parent" in the common and ordinary sense of the word.

Under Wisconsin law, claimants to proceeds of life insurance policies may establish facts sufficient to prove equitable entitlement to the proceeds even if the written terms of the policy, along with written designations of beneficiaries, unambiguously indicate that the proceeds are payable to another. *American Casualty Co. v. M. S. L. Industries, Inc., Howard Industries Division* (7th Cir. 1969), 406 Fed. 2d 1219; *Modern Woodmen of America v. Barber* (1929), 199 Wis. 635, 227 N. W. 268.

We conclude that a new trial on the issue of whether the respondent was a parent in the ordinary sense of the word, as expressed in this opinion, must be af-

forded the appellant. We reverse and remand for further proceedings consistent with the opinion.

*By the Court.*—Judgment reversed and cause remanded for further proceedings.