535 P.2d 53

Alene P. RAMSEY, Plaintiff-Respond-
ent-Cross-Appellant,

v.

Lloyd E. RAMSEY, Defendant-Appellant-
Cross-Respondent.

No. 11224.

Supreme Court of Idaho.

April 10, 1975.

Lawrence H. Duffin and Joseph M. Coughlan, Burley, for defendant-appellant and cross-respondent.

Roger D. Ling, Ling & Nielsen, Rupert, for plaintiff-respondent and cross-appellant.

McFADDEN, Justice.

In January 1946, Lloyd Ramsey enlisted in the United States Air Force and he continued to serve until his discharge and retirement in 1966. At the time of his enlistment he was residing with his parents in Burley, Idaho. He married Alene P. Ramsey on November 11, 1949, while stationed in Georgia. During the years following the marriage Ramsey was stationed in various locations, including Georgia, Germany, Korea, South Carolina, Utah, and California. During the service years his wife accompanied him on the various changes of station excepting the time Ramsey was in Korea. After completion of twenty years of service, Ramsey retired from the Air

Force and they moved to Burley, Idaho, where they have since resided.

In 1972, Alene P. Ramsey instituted this action for divorce on the grounds of extreme cruelty, seeking dissolution of the marriage, custody of the two minor children (one of whom later became of age), division of the community property, support for herself and her minor children, and attorney fees.

Following trial of the issues raised by the pleading, the trial court rendered its memorandum opinion, which by stipulation of the parties was considered as the findings of fact and conclusions of law of the court. Thereafter judgment and an amended judgment were entered dissolving the marriage, awarding custody of one child to the mother, together with a monthly allowance for his support, and division of the community property of the parties, both real and personal. Lloyd E. Ramsey (hereinafter referred to as defendant) appealed from the amended judgment, and Alene P. Ramsey (hereinafter referred to as plaintiff) cross-appealed from the same judgment.

The issues presented on this appeal pertain primarily to the division of community property. After the defendant retired from the Air Force he received monthly military retirement benefits of $341.27 per month. See, 10 U.S.C.A. §§ 8914, 8929, 8991. He has also maintained in force his National Service Life Insurance Policy, which is a governmental life insurance program afforded military personnel. On his appeal the defendant asserts the trial court erred in awarding the plaintiff forty per cent (40%) of his monthly retirement pay. On her appeal, the plaintiff asserts the trial court erred in finding the National Service Life Insurance Policy was the husband's separate property, and erred in dealing with certain other funds to be received by the defendant from a corporation.

■ In this opinion we will first consider the cross-appeal taken by the plaintiff. The plaintiff, in her cross-appeal, as her first assignment of error, challenges the trial court's finding that the National Service Life Insurance Policy was the separate property of the defendant. She contends that this policy is similar to other life insurance policies and should be held to be community property. This contention overlooks the unique nature of the National Service Life Insurance Policy and the case law interpreting the federal legislation creating the serviceman's right to this type of insurance. In Wissner v. Wissner, 338 U.S. 655, 70 S.Ct. 398, 94 L. Ed. 424 (1950), the United States Supreme Court stated:

"The National Service Life Insurance Act is the congressional mode of affording a uniform and comprehensive system of life insurance for members and veterans of the armed forces of the United States. A liberal policy toward the serviceman and his named beneficiary is everywhere evident in the comprehensive statutory plan. Premiums are very low and are waived during the insured's disability; costs of administration are borne by the United States; liabilities may be discharged out of congressional appropriations." 70 S.Ct. at 399.

The Supreme Court specifically rejected a lower court's finding that the proceeds of the policy were community property.

"* * * [S]ince the statute which made the insurance proceeds possible was explicit in announcing that the insured shall have the right to designate the recipient of the insurance, and that 'No person shall have a vested right' to those proceeds, 38 U.S.C. § 802(i), 38 U.S.C.A. § 802(i), appellee could not, in law, contemplate their capture. The federal statute establishes the fund in issue, and forestalls the existence of any 'vested' right in the proceeds of federal insurance. Hence no constitutional question is presented. However 'vested' her right to the proceeds of nongovernmental insurance under California law, that rule cannot apply to this insurance." 70 S.Ct. at 401.

To hold that the National Service Life Insurance Policy is community property thus creating "vested rights" in the policy for the plaintiff would be contrary to federal statute and case law. Harris v. Harris, 94 Idaho 358, 487 P.2d 952 (1971); United States v. Donall, 466 F.2d 1246 (6th Cir. 1972). See also, In re Marriage of Fithian (Fithian v. Fithian), 10 Cal.3d 592, 111 Cal.Rptr. 369, 517 P.2d 449 (1974), cert. den., 419 U.S. 825, 95 S.Ct. 41, 42 L.Ed.2d 48 (1974); In re Marriage of Milhan (Milhan v. Milhan), 13 Cal.3d 129, 117 Cal.Rptr. 809, 528 P.2d 1145 (1974).

■ On her cross-appeal, the plaintiff has also assigned as error the following portion of the judgment and decree:

"11. That plaintiff is awarded an undivided one-half (½) interest in all funds held by Ramsey Produce Company as a result of retained stock dividends or earnings or sums loaned to Ramsey Produce Company by defendant prior to July 14, 1972, and defendant shall deliver one-half (½) of all such funds to the plaintiff upon receipt of said sums by defendant from Ramsey Produce Company, an Idaho corporation."

This portion of the decree is too indefinite to be enforceable. The trial court should have specifically determined the nature of the interest of the parties, i. e., whether it was a loan of funds to the corporation, whether it was the result of an investment in the firm, and also whether the interest was community or separate property. After such determination has been made, the trial court should then divide this interest between the parties as the facts indicate, and if feasible, have the interest vest immediately by way of cash settlement or division of the property. See, Larson v. Larson, 95 Idaho 376, 509 P.2d 1297 (1973); McNett v. McNett, 95 Idaho 59, 501 P.2d 1059 (1972). Should the trial court deem it appropriate, it may, on application of either party, receive additional evidence on the nature of this property.

At this point we will consider the issues raised by the defendant on his appeal.

The trial court found that the parties had been married seventeen of the twenty years that the defendant served in the Air Force and therefore, $\frac{17}{20}$ of the retirement pay was community property because the defendant had been domiciled in Idaho throughout his Air Force career.

Throughout this case the defendant has contended that the trial court erred in its allocation to the plaintiff wife of forty percent (40%) of the monthly retirement benefits received by the defendant from his military retirement pay. It is his contention that throughout the time of his service with the Air Force, he was domiciled not in Idaho, but in the various stations where he served which, aside from California, were common law and not community property states. He contends that his domicile was moved from Idaho to Georgia upon his marriage to plaintiff in accordance with his actual residence and intention; that this domicile continued for the first seven years of the marriage, and later his domicile was changed to South Carolina, Utah and California in that order. He further contends that he never intended to return to Idaho, but did return to Idaho only when he was offered employment by his father to join in his father's business, Ramsey Produce Company. He asserts that for fifteen years of the marriage, he and his wife lived in various common law states and for two years they lived in California, a community property state. He thus asserts the trial court erred in its award of forty percent (40%) of his retirement pay to the wife.

Before considering the issue of the domiciliary states of the parties it is necessary first to examine the nature of the defendant's retirement pay.

■ It is generally recognized that retirement pay based upon military or naval service is not a gratuity, but is an earned property right which accrues by reason of the individual's years of military service. Berkey v. United States, 361 F.2d 983, 176 Ct.Cl. 1 (1966); Morris v. Morris, 69 Wash.2d 506, 419 P.2d 129 (1966); LeClert v. LeClert, 80 N.M. 235, 453 P.2d

755 (1969); Busby v. Busby, 457 S.W.2d 551 (Tex.1970). It is also generally recognized in community property states that military retirement benefits, to the extent that such benefits have vested or accrued while the husband and wife are domiciliary in a community property state, are community property subject to division between the parties upon dissolution of the marriage.[1] In re Marriage of Wilson (Wilson v. Wilson), 10 Cal.3d 851, 112 Cal.Rptr. 405, 519 P.2d 165 (1974); Smith v. Lewis, 107 Cal.Rptr. 95 (Cal.App.1973); Payne v. Payne, 82 Wash.2d 573, 512 P.2d 736 (1973); Morris v. Morris, supra; Otto v. Otto, 80 N.M. 331, 455 P.2d 642 (1969); LeClert v. LeClert, supra; Busby v. Busby, supra; Dominey v. Dominey, 481 S.W.2d 473 (Tex.Civ.App.1972); Mora v. Mora, 429 S.W.2d 660 (Tex.Civ.App.1968).

 The most recent cases on point have focused on the issue of whether the application of a state's community property law to military retirement pay has been pre-empted by the federal laws creating the serviceman's rights to those benefits.[2] In re Marriage of Fithian (Fithian v. Fithi-

an), 10 Cal.3d 592, 111 Cal.Rptr. 369, 517 P.2d 449 (1974), cert. den., 419 U.S. 825, 95 S.Ct. 41, 42 L.Ed.2d 48 (1974); Dominey v. Dominey, 481 S.W.2d 473 (Tex.Civ. App.1972); cert. den., 409 U.S. 1028, 93 S.Ct. 462, 34 L.Ed.2d 321 (1972); see, Mora v. Mora, 429 S.W.2d 660 (Tex.Civ. App.1968); Webster v. Webster, 442 S.W. 2d 786 (Tex.Civ.App.1969). The California Supreme Court, in the Fithian case, supra, has succinctly defined the pre-emption issue:

"When there have been questions of property law involving a conflict between a state decision and a valid federal statute, the United States Supreme Court has determined that the supremacy clause requires the state law to yield no matter how clearly the subject matter otherwise falls within the state's acknowledged sphere of power. (Free v. Bland (1962) 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180; Wissner v. Wissner (1950), 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424.) Our task, therefore, is to ascertain whether the application of California community property law to hus-

---

1. This court does not have to reach the issue of when the rights to military retirement benefits vest or accrue. In this case the serviceman had retired and was receiving retirement benefits at the time this action was initiated. Thus his rights had vested or accrued at the time of his retirement or at some time prior thereto. See, Comment, "The Unsettled Question of the Military Pension: Separate or Community Property?", 8 Cal. Western L. Rev. 522–535 (1972); Comment, "Military Retirement Benefits as Community Property: New Rules from the Supreme Court?", 24 Baylor L.Rev. 235–250 (1972).

2. Our research discloses that the proposition proposed by the dissent is directly supported by one authority—Goldberg, "Is Armed Services Retired Pay Really Community Property?", 48 Cal.State Bar J. 12 (1973). That article must be called into question because of its basic premise:

"But in fact the field is one in which the United States has exclusive legislative jurisdiction, and state law cannot operate in it unless *'the state law has been absorbed, as it were, as the governing federal rule.'* In a nutshell: The cases say state law operates here because the federal law does

not prevent it. This article says that the state law cannot operate here because the federal law does not permit it." 48 Cal. State Bar J. 13 (emphasis added).

In essence, Goldberg submits that community property law cannot operate because federal statutes tangentially related to the military retirement pay statutes do not permit it. Questions of the pre-emption of state property law should be reviewed by the standard of whether the state law is in conflict with the federal legislation, not the standard of prohibition, as Judge Goldberg argues. *Accord,* Free v. Bland, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962); Wissner v. Wissner, 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950). See Gibbons v. Ogden, 9 Wheat. 1, 6 L.Ed. 23 (1824); Kewanee Oil Co. v. Bicron Corp., 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974). The Free case and the Wissner case "make clear, however, that state law may determine the treatment accorded locally to a federally created property right so long as the result does not frustrate the express or implied purposes of the federal legislation". In re Marriage of Fithian, supra, 111 Cal. Rptr. at 372, 517 P.2d at 452. See, Bank of America v. Parnell, 352 U.S. 29, 77 S.Ct. 119, 1 L.Ed.2d 93 (1956).

band's federal military retirement pay interferes in any way with the accomplishment of the goals of Congress in creating the current military retirement scheme." 111 Cal.Rptr. 372, 517 P.2d 452.

The federal statutes dealing with the pay of enlisted Air Force personnel are silent as to the purposes and goals of such statutes. 10 U.S.C.A. § 8914, § 8929, and § 8991. After extensive independent research, this court finds that it must concur in this statement by the California Supreme Court.

"We have studied Senate reports and congressional hearings concerned with the adoption of the federal military retirement pay system in an effort to ascertain any legislative intent to preserve the benefits of the system as the separate property of the recipient. We fail to find in the legislative background any indication that Congress intended military retirement pay to be separate property, or, conversely, that treating the pay as community property circumvents the congressional scheme. There is considerable evidence that Congress enacted the federal military retirement pay system in order to bolster the morale of the serviceman and to provide him with an incentive to remain in the armed services, as well as to afford him material protection in his later years. It does not follow therefrom that applying community property law to retirement pay creates a disincentive to establish a career in the military, or detracts from a serviceman's spirit or future security." In re marriage of Fithian, supra, 111 Cal.Rptr. at 373, 517 P.2d at 453.

The Texas Supreme Court has also examined the question and has reached the same conclusion as the California court. Dominey v. Dominey, supra. See, Mora v. Mora, supra; Webster v. Webster, supra.

The conclusion that Congress has not pre-empted the application of community property laws to military retirement pay is not in conflict with either Wissner v. Wiss-

ner, supra, or Free v. Bland, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962). In the Wissner case, the United States Supreme Court found that an award of a community property interest in a serviceman's National Service Life Insurance Policy "frustrates the deliberate purpose of Congress" and that therefore such an award "cannot stand". 70 S.Ct. 400. The keystone of that opinion is the following language.

"* * * And since the statute which made the insurance proceeds possible was explicit in announcing that the insured shall have the right to designate the recipient of the insurance, and that 'No person shall have a vested right' to those proceeds, 38 U.S.C. § 802(i), 38 U.S.C.A. § 802(i), appellee could not, in law, contemplate their capture." 70 S. Ct. 401.

"The controlling section of the Act provides that the insured 'shall have the right to designate the beneficiary or beneficiaries of the insurance [within a designated class], * * * and shall * * * at all times have the right to change the beneficiary or beneficiaries * * *.' 38 U.S.C. § 802(g), 38 U.S.C. A. § 802(g). Thus Congress has spoken with force and clarity in directing that the proceeds belong to the named beneficiary and no other." 70 S.Ct. 400.

The court concluded that these statutory provisions created a direct conflict with state community property laws and therefore, the federal law must prevail. Our research does not disclose a comparable conflict between the statutes creating a serviceman's retirement pay rights and the application of state community property law to that pay.

The Supreme Court, in Free v. Bland, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962), construed the relationship of Texas community property laws to the ownership rights of a United States Savings Bond as defined by regulations promulgated by the Secretary of the Treasury. The Treasury regulations at issue provided:

" * * * the co-owner of a savings bond issued in the 'or' form who survives the other co-owner 'will be recognized as the sole and absolute owner' of the bond, 31 CFR § 315.61, and that '[n]o judicial determination will be recognized which would * * * defeat or impair the rights of survivorship conferred by these regulations,' 31 CFR § 315.20." 82 S.Ct. 1092–93.

The bond in controversy was purchased with community funds and issued to "Mr. or Mrs." Free. Mrs. Free's son, who was the principal beneficiary under his mother's will, claimed an interest in the bonds by virtue of the state community property laws. Her husband, relying upon a treasury regulation cited above, claimed exclusive ownership of the bonds. The court, finding that "the State has interfered directly with a legitimate exercise of the power of the Federal Government to borrow money", ruled that the survivorship provision conflicted with the state law and so the federal law must prevail. 82 S.Ct. 1093. Again, our research does not disclose a comparable conflict in the case at bar.

In summary, it is the conclusion of this court that defendant's Air Force retirement benefits are community property to the extent that they were earned during his years of active service and while he was married.

■ The military retirement benefits must be apportioned as community or separate property according to whether the active service upon which the benefits are based took place prior to marriage or after marriage. Accord, Mitchim v. Mitchim, 509 S.W.2d 720 (Tex.Civ.App.1974); In re Marriage of Wilson (Wilson v. Wilson), supra; Bensing v. Bensing, 25 Cal.App.3d 889, 102 Cal.Rptr. 255 (1972); Brown v. Brown, 27 Cal.App.3d 188, 103 Cal.Rptr. 510 (1972); LeClert v. LeClert, supra; Mora v. Mora, supra. In the instant case the defendant served three years of his twenty years of service in the Air Force prior to his marriage to the plaintiff and the balance of his service was during his marriage. It thus follows that $\frac{17}{20}$ths of the defendant's military retirement pay was earned during marriage, and would be the community property of the parties, subject to distribution by the trial court in the divorce action, contingent upon resolution of the issue concerning domiciliary status of the parties in a common law or community property state.

■ Concerning the domiciliary status of the parties, the trial court, after reviewing the evidence recognized that at the outset of his military service, the defendant was domiciled in Idaho, and that at the time of the divorce the parties were likewise domiciled in Idaho. In its memorandum opinion the trial court also stated:

"If there was any change of the defendant's domicile after he left Idaho in 1946, he had the burden of establishing such change by a preponderance of the evidence, and I do not believe he has met that burden. I find, therefore, that the defendant was domiciled in the State of Idaho at all times during his marriage, and that the laws of Idaho must determine the nature of the source of the Armed Services Retirement Pay as well as the character of the pay itself."

Two issues are presented in this statement —first, did the trial court correctly place the burden of proof on the defendant; and secondly, was the trial court's finding sustained by the record. Examination of the record reveals a sharp conflict in the evidence concerning the intent of the parties as to whether they intended Idaho should be considered their domicile, or whether they intended a change each time that the defendant's place of service was changed. On several of his tax returns, Idaho was listed as defendant's home address, and his military records listed Burley, Idaho, as his permanent mailing address. Upon retirement the defendant returned to Idaho where he had employment. It is the conclusion of this court that this finding of fact was sustained by competent and substantial, although conflicting evidence.

Nor do we find error in the trial court's placing upon the defendant the burden of proof of a change of domicile from Idaho. In this case the wife instituted this divorce action, claiming that numerous items of personal property were community property, and also alleging that the defendant's retirement benefits were community property. She established at trial that $\frac{17}{20}$ths of the retirement pay was acquired during the time the parties were married. All property acquired by either spouse during coverture is presumed to be community property. This presumption may be rebutted, but the burden of proof rests upon the party who asserts it to be separate property to show such fact by a preponderance of the evidence. Jacobson v. Bunker Hill & Sullivan Min. & Concentrating Co., 3 Idaho 126, 28 P. 396 (1891); McMillan v. United States Fire Ins. Co., 48 Idaho 163, 280 P. 220 (1929); Stahl v. Stahl, 91 Idaho 794, 430 P.2d 685 (1967); Houska v. Houska, 95 Idaho 568, 512 P.2d 1317 (1973). Brockelbank, The Community Property Law of Idaho (1962), p. 123. The defendant in asserting that his domicile was not in Idaho was attempting to establish that his retirement pay (to the extent that it was based on the time he was serving in common law states) was separate property. In other words he was attempting to rebut the presumption of community property as to this retirement pay, and in this regard failed to carry his burden of proof. We find no error by the trial court in placing this burden on the defendant.

The defendant also claims the trial court should have established a lump sum amount computed on the present value of the wife's interest in the retirement pay he would receive.

In several cases from other jurisdictions which have held retirement pay from the armed forces to be community property, the courts have required payment to the former wife of her community interest out of the monthly checks received by the retired serviceman. Marks v. Marks, 470 S. W.2d 83 (Tex.Civ.App.1971); In re Marriage of Wilson (Wilson v. Wilson), supra; Morris v. Morris, 69 Wash.2d 506, 419 P.2d 129 (1966).

This method of settlement of the community interest due to the wife is contrary to the concept that in this state upon dissolution of a community by divorce each spouse should have immediate control of his or her share of the community property, or at least within a reasonable time. Largilliere v. Largilliere, 50 Idaho 496, 298 P. 362 (1931); Larson v. Larson, 95 Idaho 376, 509 P.2d 1297 (1973).

The trial court shall determine as of the date of the amended decree of divorce (November 21, 1972), the then present value of the defendant's retirement pay based on his life expectancy at that time. In computation of the present value, the trial court shall use the discount rate of 6% per annum for the purpose of arriving at the discounted value of such retirement pay. Thereafter the trial court shall compute the value of the plaintiff's interest in this retirement pay and enter judgment accordingly. From the date of entry of the decree of divorce until July 1, 1974, the balance due on the judgment shall bear interest at the rate of 6% per annum and after that date, the balance due on the judgment shall bear interest at the rate of 8% per annum. I.C. § 28–22–104, and S. L.1974, Ch. 229, p. 1586, amending § 28–22–104 as of July 1, 1974.

The trial court shall further make provision for payment by the defendant to the plaintiff of the sum found due by reason of the retirement pay, such payment to be made within a reasonable time from the final judgment. Larson v. Larson, 95 Idaho 376, 509 P.2d 1297 (1973).

The trial court shall allow the parties opportunity to present such evidence as it deems proper on the issues concerning the determination of the present value of the retirement pay, or as to the reasonableness of the time within which payment should be made.

The judgment of the trial court granting the decree of divorce, the support and cus-

tody of the minor children and the division of property concerning which no issue was raised is affirmed. That portion of the judgment concerning the status of the National Service Life Insurance Policy is also affirmed, as is that portion of the judgment pertaining to the status of the retirement pay being community property. However, that portion of the judgment concerning the interest of the parties in the Ramsey Produce Company is reversed. That portion of the judgment providing for payment of the community interest in the retirement pay to be made out of the monthly payments is also reversed. The cause is remanded for further proceedings to determine the present value of the plaintiff's interest in the military retirement pay and to fix a reasonable time for payment of the sum so found, to determine the nature and the extent of the community interest in Ramsey Produce Company and to provide for division of that interest; all in conformity with the views herein expressed.

No costs allowed.

DONALDSON and SHEPARD, JJ., concur.

McQUADE, Chief Justice (dissenting).

I am unable to agree with the majority's position that Lloyd Ramsey's military retirement pay should be treated as a community asset. This issue is one of first impression before this Court. I am aware that other community property states have wrestled with this issue and reached a contrary conclusion.[1] Although case law from our sister states is persuasive, it is by no means binding upon this Court.

This dissent is founded on the premise that the area of military retirement pay has been preempted by federal law, and under the supremacy clause of the United States Constitution,[2] state law which is inconsistent must yield.

The right of the defendant, a regular enlisted member of the Air Force, to receive military retirement pay is a federally created statutory right. (10 U.S.C. § 8914, § 8929, and § 8991). Thus federal law will govern the interpretation of the nature of this right.[3] The rationale for this rule is that if the state law was paramount, the federal law would no longer be the supreme law of the land. This would be violative of the supremacy clause of the U. S. Constitution.

It is true that courts in construing federal statutes have in the past adopted and incorporated the community property laws of the several states.[4] It is also true that as a general maxim,

"Rules relating to family relationships, . . . have traditionally been regarded as embodying strong state policies with which the federal courts should not interfere."[5]

But this has not been a unanimous posture.[6] As a general rule, state law will be applied unless it would defeat or conflict with the federal legislative purpose.[7]

1. LeClert v. LeClert, 80 N.M. 235, 453 P.2d 755 (1969) ; Morris v. Morris, 69 Wash.2d 506, 419 P.2d 129 (1966) ; Mora v. Mora, 429 S.W.2d 660 (Tex.Civ.App.1968) ; Fithian v. Fithian, 10 Cal.3d 592, 111 Cal.Rptr. 369, 517 P.2d 449 (1974) ; Dominey v. Dominey, 481 S.W.2d 473 (Tex.Civ.App.1972) ; *See Also* The Unsettled Question of the Military Pension: Separate or Community Property?, 8 Cal.Western L.Rev. 522 (1972).

2. United States Constitution Article VI, Section 2.

3. Free v. Bland, 369 U.S. 663, 669-70, 82 S.Ct. 1089, 1094, 8 L.Ed.2d 180, 185 (1962).

4. See Estate of Perryman, 133 Cal.App.2d 1, 283 P.2d 298 (1955) ; Commissioner of Internal Revenue v. Wilkerson, 368 F.2d 552 (9th Cir. 1966), affirming 44 T.C. 718.

5. Note, 82 Harv.L.Rev. 1512, 1518 (1969).

6. Wissner v. Wissner, 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950) and Free v. Bland, supra note 3.

7. See Metropolitan Life Insurance Company v. Thompson, 368 F.2d 791, 794 (3d Cir. 1966) ; Solberg v. Metropolitan Life Insurance Co., 50 Wis.2d 746, 185 N.W.2d 319, 321 (1971) ; but contra Prudential Insurance Co. v. Willis, 227 Ga. 619, 182 S.E.2d 420 (1971), aff'd mem., 405 U.S. 318, 92 S.Ct. 1257, 31 L.Ed.2d 273 (1972).

Thus the issue boils down to this: is the treatment of military retirement pay as community property consistent and compatible with the Congressional intent in establishing a military retirement system?

The federal statutes dealing with the retirement pay of enlisted Air Force personnel (10 U.S.C. § 8914, § 8929, and § 8991) are silent as to whether such statutes meant to incorporate existing state community property law. This is not untypical

"For every instance in which Congress has made the choice expressly there are dozens in which it has left it uncertain. In such cases the Court has come to recognize, with increasing candor in recent years, its duty to make the choice in Congress' behalf." [8]

The U.S. Supreme Court, has not fashioned any governing rules in this area.[9] The Court might very well find "reasons which . . . make state law . . . the appropriate federal rule" [10] in this area. But until the United States Supreme Court renders a definitive ruling, this Court must attempt to ascertain the probable intent of Congress so far as it can be discerned from the statutes, their legislative history, and the interpretations given to them by the administering agencies.

In a recent definitive article on the issue of military retirement pay, Judge B. Abbott Goldberg had this to say,

"But nothing has been found to show that Congress ever conceived that retired pay would be treated as a species of partnership asset to be divided with a wife on divorce—a division converting the wife's share to separate property and giving her an interest in the retired pay

regardless of her need or remarriage, and possibly inheritable by her successors on her death. Such community property concepts cannot be read into the federal statutes, by showing that the federal statutes were 'enacted in a community property context.' Except for reference to the mode of computing the retirement income credit for federal income tax purposes in service retirement guides, no mention of community property has been found in the federal materials." [11]

A look at the retirement pay statutes bears out this contention. The applicable Air Force retirement pay statutes (10 U.S.C. § 8914 et seq.) make no mention of community property. Nor is there any reference or provision made for the spouse of the retiree. In reference to military retirement pay, Congress has remarked,

"Historically, military retired pay has been a personal entitlement payable to the member himself as long as he lives." [12]

The defendant retired from the Air Force in 1968. The Air Force Guide which would presumably be applicable to him states:

"A member of the uniformed services retired from active duty receives retired pay as long as he lives. *No part of his retirement pay (with the possible exception of arrears in pay) passes to his family when he dies.*" [13] [Emphasis in original]

The explanation as to why payment of arrears is only a *possible* exception and not an *unqualified* exception is because, "A retired member may designate whomever he desires as his beneficiary or benefici-

---

8. Hart, The Relations Between State and Federal Law, 54 Co.L.Rev. 489, 529 (1954).

9. In Wissner v. Wissner, *supra* note 6, 338 U.S. at 657 n. 2, 70 S.Ct. at 399, 94 L.Ed. at 428, the U.S. Supreme Court expressly left this issue unresolved.

10. Clearfield Trust Co. v. United States, 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838, 842 (1943).

11. Goldberg, Is Armed Services Retired Pay Really Community Property? 48 Cal.State Bar J. 12, 15 (1973).

12. S.Rep.No.1480, 90th Cong.2d Sess. (1968) ; 1968 U.S.Code Cong. & Adm.News, 1968, pp. 3294, 3300.

13. AFP 211-1-12 § 78 at 34 (1966).

aries."[14] If retirement pay was meant to be treated as community property, then it would be impossible under Idaho law for the retiree to summarily deprive his spouse of her one half vested interest in the arrearage.

"But it is not community, it is his personal entitlement so he can. The legislative history shows that Congress consciously superceded state laws conflicting with the result it desired."[15]

There are other statutes dealing with retirement pay which demonstrate that state community property law has been preempted in this area. A disabled serviceman may waive all or part of his retired pay to receive a pension from the Veteran's Administration.[16] This provision which allows a disabled veteran such a choice is totally irreconcilable with the community property system of this state. By choosing a pension in lieu of disablement pay, the husband could deprive the wife of what would otherwise have been her vested interest in a community asset.

Congress has established plans whereby a serviceman can use a portion of his retirement pay to purchase an annuity to avoid leaving his survivors destitute. Under the 1968 amendment to the Retired Serviceman's Family Protection Plan,[17] when a wife can no longer qualify as a beneficiary, the reduction from the serviceman's retirement pay for her annuity shall stop. The Department of Defense explained the purpose of the amendment, "To safeguard the participant's future retired pay when . . . a divorce occurs.[18] If retired pay is treated as a community asset, it is not safeguarded to the retiree. To treat retirement pay as community property would compel a serviceman to share this pay with an ex-wife whom Congress deliberately rendered ineligible for voluntary coverage.

Another example of Congressional disregard of community property can be seen under the Armed Forces Survivor Benefit Plan.[19] Under this plan a serviceman may use a portion of his retirement pay to purchase an annuity for his widow, i.e., the woman who survives as his wife, not his surviving ex-wife. "Divorce of the member will remove the former spouse as a prospective annuitant."[20]

In the adoption of the Survivor Benefit Plan, it seems clear from the Congressional debate that the primary concern of the bill was the serviceman's widow.[21] The provisions in the version of the bill coming from the House of Representatives calling for protection of ex-wives were stricken by the Senate with the House accepting these changes.[22] If retirement pay is community property then the ex-wife whom Congress deliberately neglected is in a better position than the widow, whom Congress explicitly preferred.

" . . . [O]ne is forced to conclude either that the objects of Congress' bounty are to be treated worse than those it neglected, or, perhaps more logically that those it neglected have no community property rights."[23]

The conclusion is inescapable that Congress has meant to occupy the field of military retirement pay completely.

"But the point is not whether the state law coincides with the federal law, but whether Congress has left room for state law to operate. If it has not left such

14. DA PAM 600–5, § 51 at 29 (1969). AR 37–104–1, § 1–13(c) (Cl., 1972), § 8–12(a), 8–13(d) (1971).

15. Goldberg, *supra* n. 11, at 17.

16. 38 U.S.C. § 3105 (1970).

17. 10 U.S.C. §§ 1431–1446 (1970) See § 1434(c); 32 C.F.R. § 48–402 (1972).

18. S.Rep.No.1480, *supra* n. 12, U.S.Code Cong. & Admin.News, at 3307.

19. 10 U.S.C. §§ 1447–1455 (1972).

20. 32 C.F.R. § 48–303 (1972); See also AFR 211–14, § 206(a) (1969).

21. See 118 Cong.Rec.S. 14, 334 (daily ed. 9/8/72). Senator Bentsen, the Chairman of the Subcommittee dealing with the statute called it the "Widow's Equity Bill."

22. 118 Cong.Rec.H. 8255 (daily ed. 9/12/72).

23. Goldberg, *supra* n. 11, at 89.

room, 'coincidence is as ineffective as opposition.' (Cite omitted) Congress has operated on the premises that 'military retired pay is a personal entitlement payable to the member himself,' and that the rights in retirement pay accrue to the retiree. These premises are wholly within the control of Congress. A state cannot of its own volition rewrite these Congressional declarations to say that retired pay is the entitlement not only of the member but also of his wife at retirement, and that it accrues not to him but to him and that wife. But that is what the cases have done."[24]

To the extent that state community property law is inconsistent with the administration of the federal military retirement pay scheme, it must yield.

"The relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that federal law must prevail."[25]

I would hold that because the area of military retirement has been preempted by federal law, state community property concepts can not operate in this area.

Until the issue of how to characterize military retirement pay is resolved by the U.S. Supreme Court,[26] I propose to treat the husband's retirement pay as his separate ordinary income. This pay could be made available in the form of alimony and child support for the retiree's former spouse and children until such time as she is able to support herself.[27]

If the majority's opinion is carried to its logical end, an anomolous result could occur. A wife could be awarded a percentage of her husband's retirement pay upon a divorce which would then become her separate property. She could then remarry and possibly predecease her former husband. Her rights to the retirement pay would pass to her heirs if she died intestate, or to whomever she designated in her will. Thus the former husband would be saddled with paying out part of his retirement pay after his ex-wife died to an unknown beneficiary for as long as he lived. It is hard to imagine a situation more at odds with the purposes behind the community property system in Idaho.

BAKES, Justice (dissenting).

The decisions of the United States Supreme Court in Wissner v. Wissner, 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950), and Free v. Bland, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962), are controlling in this case, in my opinion, and therefore the decision of the trial court awarding the wife an interest in the husband's military retirement pay, claiming it to be community property, should be reversed. As long as those two decisions remain in effect, the efforts of the state courts to avoid the preemption doctrine by trying to distinguish military retirement pay from the National Service Life Insurance involved in the *Wissner* case, or the United States savings bond involved in Free v. Bland, *supra*, can only further complicate this area of the law.

If the only adverse result from these kinds of distinctions was the necessity of learning numerous exceptions to a general rule, the result in this case could perhaps be tolerated. However, as is often the case, result-oriented decisions do the further disservice of making bad law. The case of Fithian v. Fithian, 10 Cal.3d 592, 111 Cal. Rptr. 369, 517 P.2d 449 (1974), much relied upon by the majority for its conclusion here, is an example. In the *Fithian* case, the California Supreme Court was con-

---

24. *Id.*

25. Free v. Bland, *supra* n. 3, 369 U.S. at 666, 82 S.Ct. at 1092, 8 L.Ed.2d at 183.

26. The U.S. Supreme Court denied certiorari in Fithian v. Fithian, *supra* note 1. See 419 U.S. 825, 95 S.Ct. 41, 42 L.Ed.2d 48.

27. Where there is insufficient community property to provide for the wife's support, and the support and education of the children, the court may resort to the separate property of the husband. See I.C. § 32–708; Jolliffe v. Jolliffe, 76 Idaho 95, 278 P.2d 200 (1954); I.C. § 32–710; Voss v. Voss, 91 Idaho 17, 415 P.2d 303 (1966).

fronted with the problem, after having concluded that the husband's military retirement pay was community property, of what to do with the wife's one half interest in that military retirement pay if she should predecease him. Recognizing that the wife might die first and leave her one half interest in the husband's military retirement pay to her heirs, who might be her children but who might also be a subsequent husband who could even in fact be a draft dodger, a situation which obviously would be inconsistent with the purposes Congress had in establishing military retirement pay in the first place, the California court concluded that upon the wife's death her interest in the husband's retirement pay would terminate. If the husband's military retirement pay was in fact community property, and one half of it belonged to the wife, it would be an absolute property right which would pass to the wife's heirs like any of the other community property which the wife is awarded in the divorce. It certainly mongrelizes recognized property law concepts to say that upon her death that property right terminates in order to avoid a result which would point up the obvious inconsistencies with the congressional intent in establishing military retirement pay. Even if the ex-wife doesn't predecease him, she might assign her interest to a bank as security and have it foreclosed, or sell it to a third person or corporation. It hardly comports with congressional intent that some bank or finance company would wind up owning one half of a serviceman's retirement income.

The majority in this case attempt to avoid the dilemma faced by the California court in *Fithian* by decreeing that the husband should have to buy out the wife's interest in the retirement pay within a rea-sonably short time, relying upon our recent case of Larson v. Larson, 95 Idaho 376, 509 P.2d 1297 (1973). The appellant husband is now approximately 47 years old and, depending upon which annuity table one chooses, has approximately 22 to 25 years estimated mortality. His present monthly retirement pay, according to the majority opinion, is $341.37, making an annual retirement pay of $4,096.44. Depending upon the interest rate used, the present value of that annual retirement pay for the husband's estimated lifetime would be approximately $40,000 to $50,000 which means that the appellant husband would have to come up with approximately $16,000 to $20,000 cash to buy out the wife's 40% interest in his retirement pay which the majority has determined to be community property. All indications from the record are that this will bankrupt the husband. This, incidentally, might be one way for the husband to avoid the effect of the majority's judgment entirely, since the judgment in this case would probably be dischargeable in bankruptcy, but the future military retirement pay would probably not be an asset administered in the bankrupt estate.

For the foregoing reasons, and all of the reasons pointed out in the dissent of Chief Justice McQuade, the preemption rationale of the Wissner v. Wissner case and Free v. Bland apply equally to the facts of this case and the judgment of the trial court that the husband's retirement pay should be community property should be reversed. There are other ways to give financial security to the wife, such as a disproportionate distribution of the remaining community property, and alimony. See Speer v. Quinlan, 96 Idaho 119, 525 P.2d 314 (1974).